Albert D. SWITZER, Executor of the Estate of Clara L. Switzer, Deceased, Plaintiff-Appellant,

v.

John Thornton CARROLL and Celina Mutual Insurance Company, Defendants-Appellees.

No. 16201.

United States Court of Appeals Sixth Circuit.

April 11, 1966.

Samuel A. McCray, Dayton, Ohio, for appellant, Smith & Schnacke, Dayton, Ohio, on the brief.

Hugh H. Altick, Dayton, Ohio, for appellees, Altick & McDaniel, Dayton, Ohio, on the brief.

Before PHILLIPS, Circuit Judge, and BROWN and GREEN, District Judges.[*]

GREEN, District Judge.

On May 11, 1961 plaintiff-appellant obtained a default judgment against defendant John Thornton Carroll in the amount of $30,000.00. This judgment was based on a complaint for the wrongful death of plaintiff's decedent, as a result of an automobile accident.

On September 8, 1961 plaintiff filed a supplemental complaint against defendant-appellee, Celina Mutual Insurance Company, seeking to recover $25,000.00, the face amount of an insurance policy, to be applied on the unsatisfied judgment, on the claim that at the time of the fatal accident John Thornton Carroll was an insured under a standard garage liability insurance policy issued by defendant insurance company to Cecil Carroll and Harry Carroll, who conducted a garage and automobile repair business in Jonesville, Virginia, known as Carroll Bros.

Following a trial at which a stipulation of facts and oral testimony was presented, the District Court, Chief Judge Carl Weinman, entered a memorandum opinion, finding in defendant's favor, and an order of dismissal of the complaint on the merits. Plaintiff has appealed from that holding.

The essential facts herein, as found by the District Court, may be summarized as follows:

On October 15, 1958, at Abington, Virginia defendant Celina Mutual Insurance Company entered into a contract of insurance with Cecil Carroll and Harry Carroll, T/A Carroll Bros. The application for insurance was made in Virginia, the policy was countersigned in Virginia, the policy was delivered and was accepted by the insured in Virginia and the premiums were paid there. The policy was a standard "garage liability policy" insuring the garage premises, the garage business operations, the liability of garage-owned automobiles whether used in the garage business or not, and liability of non-owned automobiles casually used for non-business purposes which the garage had "charge of" or "used principally in" its garage business.

The policy provided insurance coverage for any automobile owned by the named insured in connection with the above defined operations for the use of the named insured, a partner therein, an executive officer thereof, or a member of the household of such person.

On April 16, 1959, Carroll Bros. purchased a 1951 Mercury automobile. Thereafter, Virginia license No. 891206 for an "insured motor vehicle"[1] and Virginia Certificate of Title 244032 were issued to Carroll Bros. Used Auto Parts, one of the trade names used by the named insured, for the said vehicle.

John Thornton Carroll, against whom plaintiff's judgment was recovered, is the son of Cecil Carroll. At the time the 1951 Mercury was acquired by Carroll Bros., John Thornton Carroll was a member of the household of Cecil Carroll and was an employee of Carroll Bros. John Thornton Carroll had no ownership interest in Carroll Bros.

A short time prior to August 24, 1959 John Thornton Carroll drove the Mercury automobile from Virginia to Dayton, Ohio on business of Carroll Bros. After arriving in Dayton, John Thornton Carroll determined to sever his employment with Carroll Bros. and to remain in the Ohio city and enter employment there. He telephoned his father in Virginia and advised him of his intentions.

As a result of that call, Cecil and Harry Carroll decided to give the Mercury automobile to John Thornton Carroll. Pursuant to that decision, Cecil Carroll, acting for the partnership, assigned the Vir-

[*] Honorable Bailey Brown, United States District Judge for the Western District of Tennessee, and Honorable Ben C. Green, United States District Judge for the Northern District of Ohio, sitting by designation.

1. Under the Virginia statutes there are different type licenses issued for motor vehicles covered by insurance and for uninsured vehicles.

ginia certificate of title on the back thereof over to John Thornton Carroll, acknowledged the same before a Notary Public, and mailed it to him in Ohio. John Thornton Carroll received the assigned certificate about the first week in September, 1959.

When the title was sent to John Thornton Carroll he was instructed to have the title to the car registered in Ohio and to return the Virginia license tags to his father, Cecil Carroll.

On September 15, 1959, while operating the Mercury automobile solely for his own use and pleasure, John Thornton Carroll was involved in an accident in Dayton, Ohio which was the subject of the suit against him. At the time of the accident the Mercury still bore the Virginia license plates, no Ohio certificate of title having been obtained for the said vehicle. Thereafter, on September 18, 1959 an Ohio certificate of title was obtained for the wrecked car.

Prior to the time of the accident John Thornton Carroll had determined to return to Virginia, his Ohio employment opportunity having fallen through. The accident happened a few days before his planned departure.

The Celina Mutual Insurance Company investigated the accident and thereafter notified Carroll Bros. that it was of the opinion that there was no liability coverage under the terms of the insurance contract and declined the defense of the action filed against defendant John Thornton Carroll in the Ohio court.

This basically is the factual background upon which the District Court determined that no insurance coverage was extended to John Thornton Carroll under defendant's policy at the time of the accident in question. In making the said ruling the District Court held that under Virginia law Carroll Bros. was no longer the "owner" of the Mercury vehicle, within the terms of the insurance policy, at the time of the accident, in that an effective gift of the said vehicle had previously been made to John Thornton Carroll.

Appellant contends that the District Court erred in two respects: (1) In holding that there had been a completed gift of the vehicle, and (2) in applying the law of Virginia, rather than Ohio, to determine the question of legal title to the vehicle at the time of the accident.

■ As to the first claimed error, appellant argues that the gift from Carroll Bros. to John Thornton Carroll was conditional, and the donee had not performed the requisite conditions—registering his title in Ohio and the return of the Virginia license plates to the donor. The District Court found that there had been an effective acceptance by the donee at the time of the accident.

This was a question of fact, and from the record this Court finds no showing that the ruling of the District Court was clearly erroneous.

The second issue, that concerning the application of the Virginia law, requires consideration of principles of conflict of laws and comity between the states involved.

Appellant concedes that the insurance contract herein was a Virginia contract.

■ Under the Ohio conflict of law rules covering insurance contracts, the law of the place where the insurance contract was made governs the interpretation of the contract. Garlick v. McFarland, 159 Ohio St. 539, 545, 113 N.E.2d 92 (1953). The Ohio rule appears to be the generally accepted rule in the United States. See 29 American Jurisprudence, Insurance, § 31, p. 450; Scudder v. The Union National Bank of Chicago, 91 U.S. 406, 412, 23 L.Ed. 245 (1875).

It is argued, however, that the Virginia courts would look to the law of Ohio, the situs of the chattel, to determine ownership of the car. It is then contended that under the Ohio Certificate of Title Act John Thornton Carroll would not be recognized as the owner of the 1951 Mercury at the time of the accident. It is then stated, therefore, that ownership remained in the Carroll Bros. and there was insurance coverage under the terms of the policy.

The Court is of the opinion that this manner of posing the problem does not reflect the true determining factor in this case. It assumes that the controlling issue under consideration is whether or not there was vested in John Thornton Carroll a recognizable legal title to the car under the Certificate of Title Act of Ohio, whereas this Court is of the opinion that the true issue is whether or not the Carroll Bros. effectively divested themselves of any legal interest they had in the said vehicle, and whether their actions in assigning the Virginia certificate of title over to John Thornton Carroll terminated the insurance coverage of the policy with respect to the 1951 Mercury automobile involved in the accident.

The difficulty herein lies in a basic difference in the automobile title laws of the states of Virginia and Ohio.

 Under the law of Virginia the owner of a motor vehicle transfers his interest therein by endorsement of an assignment and warranty of title upon the reverse side of the certificate of title and delivering the same to the transferee at the time of delivering the vehicle, § 46.1–87 Code of Virginia.[2] *The District Court found that Carroll Bros. fully complied with this statutory provision and by this assignment terminated the insurance coverage on the Mercury automobile.*

In Ohio, however, the Code provides that:

No person acquiring a motor vehicle from the owner thereof * * * shall acquire any right, title, claim, or interest in or to said motor vehicle until such person has issued to him a certificate of title to said motor vehicle * * *. No court in any case at law or in equity shall recognize the right, title, claim, or interest of any person in or to any motor vehicle sold or disposed of, or mortgaged or encumbered, unless evidenced:

(A) By a certificate of title * * * issued in accordance with sections 4505.01 to 4505.19, inclusive, of the Revised Code. * * *

*Ohio Revised Code* § 4505.04.

Virginia has no comparable code provision.

Appellant in his argument as to the law has assumed the Ohio courts would automatically apply the Ohio Certificate of Title law to determine the legal interests in the said vehicle.

 Under the Ohio law it is generally held that an individual holding a proper *Ohio certificate of title* is conclusively presumed to be the owner of the vehicle described therein, and is protected against the claims of others to the said vehicle. Kelley Kar Co. v. Finkler, 155 Ohio St. 541, 99 N.E.2d 665 (1951).

 In this case there was no Ohio certificate of title outstanding on the 1951 Mercury at the time of the accident. The question therefore to be determined is whether an Ohio court would be precluded from recognizing the effectiveness of the Virginia transfer by reason of the Ohio Certificate of Title law.

In its initial consideration of the Ohio Certificate of Title law the Ohio Supreme Court stated that no extra-territorial scope may be given to these sections. State ex rel. City Loan & Savings Co. v. Taggart, 134 Ohio St. 374, 17 N.E.2d 758 (1938). Subsequent application of the Ohio statutes indicates that this stated limitation has been adhered to by the Ohio courts and courts applying Ohio law.

In Gibson v. Bolner, 165 Ohio St. 357, 135 N.E.2d 353 (1956), a chattel mort-

2. Section 46.1–87 Code of Virginia
 Transfer of Certificate of Title.
 How transferred.—The owner of a motor vehicle, trailer or semitrailer registered under the provisions of this chapter transferring or assigning his title or interest thereto shall endorse an assignment and warranty of title upon the reverse side of the certificate of title of the motor vehicle, trailer or semitrailer to the purchaser thereof, with a statement of all liens or encumbrances thereon, shall acknowledge his signature thereto before a person authorized to administer oaths and shall deliver the certificate to the purchaser or transferee at the time of delivering the motor vehicle, trailer or semitrailer. (Code 1950, § 46–84; 1958, c. 541.)

gage executed and recorded in Ohio, on a motor vehicle operated in Ohio, was held inferior to a lien noted on a Florida certificate of title, in which state the vehicle was originally sold and titled. *As in the case here under consideration, there was no Ohio certificate of title issued on the vehicle involved.* The Ohio Supreme Court stated:

> The Florida certificate of title was admitted in evidence in the court below. It represents a public act and record of the state of Florida and as such was entitled to be accorded full faith and credit by the Ohio court, id., p. 361, 135 N.E.2d p. 356.

Cf.: Austin v. River, 95 Ohio App. 400, 403, 120 N.E.2d 133 (1953).

This issue of the effect of the Ohio Certificate of Title Act on foreign transactions affecting rights to the same vehicle was recently considered by the Ohio Supreme Court, Commercial Credit Corp. v. Pottmeyer, 176 Ohio St. 1, 197 N.E.2d 343 (1964). Therein, the holder of a clear Ohio certificate of title prevailed over the holder of a West Virginia conditional sales agreement. The Court distinguished its prior ruling in Gibson v. Bolner, supra, as "a case where no one had an Ohio certificate of title," id., p. 4, 197 N.E.2d p. 346, and did not disturb the ruling of Gibson v. Bolner, although overruling a prior decision deemed inconsistent with the Pottmeyer holding, [Atlantic Finance Co. v. Fisher, 173 Ohio St. 387, 183 N.E.2d 135 (1962)].

■ The purpose of the Ohio Certificate of Title Act was to prevent the importation of stolen motor vehicles and to protect Ohio bona fide purchasers against thefts and wrongdoers, and to create an instrument evidencing title which would more adequately protect innocent purchasers. Commercial Credit Co. v. Pottmeyer, supra; Mutual Finance Co. v. Kozoil, 172 Ohio St. 265, 175 N.E.2d 88 (1961); Kelley Kar Co. v. Finkler, supra.

■ As this Court views the decisions of the Ohio Supreme Court, in cases where no Ohio certificate of title has been issued no extra-territorial scope is given to these sections. Therefore, foreign transactions affecting rights to motor vehicles are recognized by the courts in Ohio so long as there is no Ohio certificate of title outstanding in conflict with the rights evidenced by the foreign transactions.

When called upon to construe the extra-territorial effect of the Ohio Certificate of Title Act, a Federal Court reached the same conclusion as was later arrived at by the Ohio Supreme Court, In re Swesey, 112 F.Supp. 773 (D.C.N.D.Ohio, 1953). In that case, Judge Kloeb stated:

> There is no question raised but that the sale and encumbrance of this automobile was valid under the laws of Michigan. There is nothing in the Ohio Certificate of Title Law which indicates an intention on the part of the legislature to make a transaction of this kind, valid under Michigan laws, void under the laws of Ohio, and the Court will not read into the statute language which is not there. id., p. 776.

The vehicle under consideration therein was, at the time pertinent, situated in Ohio and the rights thereto were being litigated as a part of a bankruptcy proceeding in the District Court for the Northern District of Ohio and as in the case here under consideration there was no Ohio certificate of title issued on the vehicle involved.

This Court is of the opinion that under the controlling Ohio law, as reflected by the foregoing authorities, the District Court was correct in recognizing the validity of the transaction under Virginia law, and that under Virginia Auto Title Law the insureds had effectively divested themselves of any legal interest or ownership in the subject 1951 Mercury automobile prior to the time of the accident giving rise to the plaintiff's claim.

This Court affirms the finding of the District Court in holding that the legal effect of the contract was to be determined by the law of Virginia and that the Carroll Bros. had done everything required of them by the Virginia statutes to divest themselves of ownership of the

Mercury automobile, thereby terminating the insurance coverage thereon. It therefore follows that the decision of the District Court dismissing plaintiff's complaint was correct, and the same is hereby affirmed.

BAILEY BROWN, District Judge, concurs only in the result.