CITIZENS FINANCIAL CORP., APPELLANT, *v.* PORTERFIELD, TAX COMMR., APPELLEE.

(No. 70-170—Decided February 10, 1971.)

*Mr. James F. Hadley,* for appellant.

*Mr. Paul W. Brown,* attorney general, and *Mr. C. Luther Heckman,* for appellee.

HERBERT, J. The appellant's first contention is that the decision of the Board of Tax Appeals is unreasonable and unlawful because the appellant's business activities as of the tax listing day, December 31, 1964 (R. C. 5725.14), did not constitute it a dealer in intangibles within the meaning of paragraph (B) of R. C. 5725.01.[3] Upon an examina-

---

[3] "(B) 'Dealer in intangibles' includes every person who keeps an office or other place of business in this state and engages at such office or other place in the business of lending money, or discounting, buying, or selling bills of exchange, drafts, acceptances, notes, mortgages, or other evidences of indebtedness, or of buying or selling bonds, stocks, or other investment securities, whether on his own account with a view to profit, or as agent or broker for others, with a view to profit or personal earnings. Dealer in intangibles excludes institutions used exclusively for charitable purposes, insurance companies, and financial institutions. Neither casual nor isolated transactions of any of the kinds enumerated in this division of this section, nor the

tion of the record, which reveals that Citizens Financial extended loans to its clients and that it served in the capacity of an agent in seeking adequate financing for its clients, we conclude that the appellant was a dealer in intangibles within the meaning of paragraph (B) of R. C. 5725.01.

The taxpayer's second argument is that the Board of Tax Appeals' decision is unreasonable and unlawful, insofar as the board affirmed the Tax Commissioner's determination of the fair value of the Citizens Savings and Loan Company stock owned by the appellant.[4]

In support of this position, the appellant asserts first that the board failed to give effect to the case of *Opdyke* v.

---

investment of funds as personal accumulations or as business reserves or working capital constitute engaging in business within the meaning of this division of this section; but a person who, having engaged in the business of lending money, or discounting, buying, or selling bills of exchange, drafts, acceptances, notes, mortgages, or other evidences of indebtedness on his own account, remains in business for the purpose of realizing upon the assets of such business is deemed a dealer in intangibles, though not presently engaged in lending money or discounting or buying such securities."

[4]The parties agreed to the following stipulation at the hearing before the Board of Tax Appeals as to the technique which the Tax Commissioner used in ascertaining the value of the appellant's investment in its subsidiary:

"We offer to stipulate that Citizens Financial Corporation, on December 31, 1964, owned 341,227 shares of Citizens Savings and Loan Company; that is out of a total outstanding shares for Citizens Savings and Loan Company of 348,041 shares. We offer to stipulate that the Department took the net worth of Citizens Savings and Loan Company, as shown on its 1965 Financial Institutions Tax Return, Form 970, and divided that net worth by the total number of shares of Citizens Savings and Loan Company outstanding on December 31, 1964, namely: 348,041 shares, and in making this decision arrived at a book value, as of 12-31-64, of 9.374 dollars per share.

"We offer to stipulate that the value of Citizens Financial Corporation's investment in the Citizens Savings and Loan Company, as the Commissioner asserts is due in the Citizens Financial Corporation's Dealer in Intangibles Tax Return for 1965, was arrived at by multipying the number of shares of Citizens Savings and Loan Corporation, owned by Citizens Financial Corporation, times the book value of Citizens Savings and Loan Corporation arrived at as we had previously indicated."

*Security Savings & Loan Co.* (1952), 157 Ohio St. 121, 105 N. E. 2d 9. In *Opdyke,* the plaintiffs, minority shareholders of a building and loan association which was to be converted into a federal savings and loan association, challenged the fairness of the plan of conversion under which they were to receive $135 per share in exchange for their shares which had a book value of $372.95. The *Opdyke* opinion discussed matters similar to factors presented below in the instant cause by the appellant, regarding the valuation of shares of a building and loan company, such as the effect of federal reserve requirements upon dividend policy and the difficulties in realizing, upon liquidation, the face value of mortgages held by a savings and loan company.

Although *Opdyke* appears to be the only case in which this court has discussed the problem of valuation of savings and loan company shares, we believe the opinion reveals that the question of value there turned upon evidence of sale prices of the shares rather than upon the reserve and liquidation factors mentioned above.

Appellant asserts also that the Board of Tax Appeals decision on the question of valuation was based solely upon incompetent evidence. In the record before us, the Board of Tax Appeals gave as its only reason for affirming the Tax Commissioner's valuation of the appellant's investment in its subsidiary (at $9.374 per share) the fact that ''the only evidence of sale price of shares was given by appellant's own witness and placed a range of $9 to $15 as sale prices *within his knowledge.''* (Emphasis added.)

It has been repeatedly held that it is not the function of this court to substitute its judgment on factual issues for that of the Board of Tax Appeals. We are limited to a determination from the record whether the decision reached by the board is unreasonable or unlawful. See *Brennan* v. *Board of Tax Appeals* (1963), 175 Ohio St. 263, 193 N. E. 2d 700; *Neil House Hotel Co.* v. *Board of Revision* (1946), 147 Ohio St. 231, 70 N. E. 2d 646; *Columbus* v. *Budget*

*Comm. of Franklin County* (1945), 144 Ohio St. 437, 59 N. E. 2d 367; *Stritch* v. *Budget Comm. of Clark County* (1942), 140 Ohio St. 495, 45 N. E. 2d 601; *Board of Edn. of Cleveland Hts. City School Dist.* v. *Evatt* (1940), 136 Ohio St. 283, 25 N. E. 2d 453. The scope of review of decisions of the Board of Tax Appeals is circumscribed in this manner because it was not the intention of the General Assembly in providing for review in this court from decisions of the Board of Tax Appeals to make this court a "super" Board of Tax Appeals. *Hercules Galion Products* v. *Bowers* (1960), 171 Ohio St. 176, 168 N. E. 2d 404. However, where there is an absence of evidence to support the decision under review, the question becomes one of sufficiency, as opposed to weight of the evidence, and is one of which this court will take cognizance. See *Ace Steel Baling* v. *Porterfield* (1969), 19 Ohio St. 2d 137, 139, note 2, 249 N. E. 2d 892.

In the record we have before us, the witness relied upon by the Board of Tax Appeals in upholding the Tax Commissioner's evaluation of the subsidiary shares did state that he knew of sales of the subsidiary stock for between $9 and $15 per share. However, those sales took place in or subsequent to May of 1967—two years after the return year in question. When finally asked if he had any knowledge of such sales prior to May of 1967, the witness replied:

"Well, I really don't, as a matter of fact."

The record we have before us contains no probative evidence to support the finding of the Board of Tax Appeals that the value of the subsidiary stock in 1965 was $9.374 per share. Therefore, the decision of the Board of Tax Appeals must be reversed and the cause remanded to the board for further consideration of that issue.

*Decision reversed.*

O'NEILL, C. J., SCHNEIDER, DUNCAN, CORRIGAN, STERN and LEACH, JJ., concur.