PPG INDUSTRIES, INC., TRUCKING DIV., APPELLANT, *v.*
LINDLEY, TAX COMMR., APPELLEE.

[Cite as PPG Industries *v.* Lindley (1982), 1 Ohio St. 3d 212.]

(No. 82-29—Decided August 11, 1982.)

*Messrs. Glander, Brant, Ledman & Newman, Mr. Charles F. Glander* and *Mr. Karl R. Inman,* for appellant.

*Mr. William J. Brown,* attorney general, and *Mr. Mark A. Engel,* for appellee.

*Per Curiam.* The sole issue presented herein is whether the decision of the Board of Tax Appeals ("BTA") holding that the transfer of the 12 trailers is subject to the Ohio sales tax is unreasonable or unlawful.

Appellant urges two grounds for reversal of the BTA's decision: (1) there was no "sale" subject to tax within Ohio; and (2) imposition of a sales tax under the facts of this case would contravene Clause 3, Section 8, Article I of the Constitution of the United States — the Commerce Clause.

Appellant contends that before the Ohio sales tax may apply there must first be a "sale" in Ohio; *i.e.,* there must be a transaction by which title or possession of tangible personal property is transferred for a consideration *in Ohio.* Stated simply, appellant argues that neither of the statutory definitions of "sale" apply in this cause. First, appellant maintains that since the 12 trailers were already in its possession on March 15, 1976, there was no "transfer" of possession in Ohio. Second, according to appellant the only basis for imposing a sales tax would, thus, be on the transfer of title and this event occurred, not in Ohio, but in Michigan.[1]

R.C. Chapter 5739 provides the legislative mandate for the sales tax. R.C. 5739.02 provides for an excise tax on retail sales in Ohio. According to R.C. 5739.01(B), a sale includes all transactions in which title or possession or both, of tangible personal property, is transferred. Because PPG already had possession of the trailers, the sale occurred in Ohio only if the transfer of title transpired in Ohio.[2]

R.C. 1302.42 helps in determining when and where the titles were

---

[1] In oral argument, both parties stated that a sales tax had been paid in Michigan on the March 1976 sale.

[2] The sale was a separate transaction, not contemplated in the prior lease. Delivery at the time of the lease cannot be equated with transfer of possession at the sale. Therefore, there was no transfer of possession that R.C. 5739.01(B) requires for a sale.

transferred. On these facts, R.C. 1302.42(A) governs this determination. It states "* * * title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties."[3] The parties agreed that the title would be transferred in Michigan. Although the contract of sale is not included in the record, the Board to Tax Appeals' decision concluded that the Fruehauf Corporation, the seller, had contractually bound itself to transfer title to the semi-trailers. This conclusion is supported by the stipulation of the parties that "[t]itles to the trailers were transferred from Fruehauf to PPG in the state of Michigan." The parties agreed to transfer title in Michigan and, thus, R.C. 1302.42(A) controls.

Because neither possession nor title was transferred in Ohio, the sale did not occur within the state. Pursuant to R.C. 5739.02, which allows for an excise tax on retail sales in Ohio, the tax was improperly levied on these out-of-state trailers. Only those sales made within the state can be taxed, but not those sales outside its borders.

Inasmuch as the transaction at issue did not occur in Ohio, the BTA unreasonably and unlawfully upheld the commissioner's assessment on appellant's trailers. In reversing the BTA on statutory grounds we find it unnecessary to address appellant's constitutional contentions.

For the reasons hereinbefore stated, the decision of the BTA is reversed.

*Decision reversed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, HOLMES and C. BROWN, JJ., concur.

LOCHER and KRUPANSKY, JJ., dissent.

LOCHER, J., dissenting. The majority concludes that R.C. 1302.42(A) controls in this case. I disagree and, therefore, dissent.

The majority correctly quotes R.C. 1302.42(A) as providing, in part: "* * * *title* to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties." (Emphasis added.) The term "title" which is used in that provision, however, differs from that used in the parties' stipulation: *"Titles* to the trailers were transferred from Fruehauf to PPG in the State of Michigan * * *." (Emphasis added.) In the stipulation, the word "titles" means the tangible *certificates of title* not the ownership concept of "title." This distinction requires that we apply R.C. 1302.42(C) (situs of the making of the contract controls), *infra,* to determine whether the taxable event occurred in Ohio.

---

[3] The language of R.C. 5739.01(B) clearly requires a transfer of title or possession and does not make a sale dependent upon the situs of the signing of a contract.

I would hold that the levy of the Ohio sales tax on this transaction was proper, because the parties made the contract in Ohio and, therefore, the transfer of title occurred in Ohio.

R.C. 5739.02 levies an excise tax "on each retail sale made in this state." With certain exceptions, which the parties have not asserted in this case, all "sales" are retail sales. R.C. 5739.01(E). " 'Sale' and 'selling' include all transactions by which title or possession, or both, of tangible personal property, is or is to be transferred * * * for a consideration in any manner, whether absolutely or conditionally, whether for a price or rental, in money or by exchange, and by any means whatsoever * * *." R.C. 5739.01(B). Appellant clearly had possession before and after the purchase. We must, therefore, examine whether *title* to the 12 trailers in question was transferred in Ohio.

Appellant concedes that the contract was made in Ohio. Yet, appellant argues that Michigan is the situs of the sale, because Fruehauf transferred its Michigan certificates of title to appellant. This court, however, has previously refused to apply Ohio's Certificate of Motor Vehicle Title Law, R.C. 4505.01 *et seq.,* formalistically in order to determine the nature of a party's interest in property. "* * * The purpose of the Certificate of Title Act is to prevent the importation of stolen motor vehicles, to protect Ohio bona-fide purchasers against thieves and wrongdoers, and to create an instrument evidencing title to, and ownership of motor vehicles. *Commercial Credit Corp.* v. *Pottmeyer* (1964), 176 Ohio St. 1 [26 O.O.2d 286]; *Switzer* v. *Carroll* (C.A. 6, 1966), 358 F. 2d 424 [36 O.O.2d 232]; *Associates Discount Corp.* v. *Colonial Finance Co.* (1950), 88 Ohio App. 205 [30 O.O.2d 463]. The Act was not adopted to clarify contractual rights and duties, as was R.C. Chapter 1302." *Hughs* v. *Al Green, Inc.* (1981), 65 Ohio St. 2d 110, 115 [19 O.O.3d 307] (opinion by Sweeney, J.).[4] Indeed, it is R.C. Chapter 1302 which gives us direction in this case as to when and where titles are transferred for purposes of R.C. 5739.01(B).

R.C. 1302.42(C) provides: "Unless otherwise explicitly agreed where delivery is to be made without moving the goods,

"(1) if the seller is to deliver a document of title, title passes at the time when and the place where he delivers such documents; or

"(2) if the goods are at the time of contracting already identified and no documents are to be delivered, title passes at the time and place of contracting."

The trailers were already in the possession of the purchaser, appellant.

---

[4] "The reason for the statute [4505.04] is to determine what proof, *i.e.,* certificate of title, should be required where a plaintiff is asserting some right pertaining to his allegedly owned automobile and defendant's defense or claim is based upon a claimed right, title or interest in the same automobile. The reason ceases when the defendant's defense is not based upon some claimed right, title or interest in the same automobile." *Grogan Chrysler-Plymouth, Inc.* v. *Gottfried* (1978), 59 Ohio App. 2d 91, 95 [13 O.O.3d 154], footnote 4 (opinion by Brown, Clifford, J.), motion to certify denied, June 16, 1978.

The "documents of title" mentioned in R.C. 1302.42(C) are bills of lading and the like, R.C. 1301.01(O), which are not involved in this case. "* * * If shipment is not contemplated division (C) turns on the seller's final commitment, *i.e.*, the delivery of documents or the making of the contract." R.C. 1302.42(C), Official Comment 4. Fruehauf's final commitment was making the contract. *That* was the taxable event, and it occurred in Ohio.

Appellant also argues that the tax imposed in this case violates the Commerce Clause of Section 8 of Article I of the United States Constitution. Two United States Supreme Court cases require the opposite conclusion.

In *McGoldrick* v. *Berwind-White Coal Mining Co.* (1940), 309 U.S. 33, the court upheld a New York City tax "* * * conditioned upon events occurring within the state, either transfer of title or possession of the purchased property, or an agreement within the state, 'consummated' there, for the transfer of title, or possession. * * *" 309 U.S., at 43-44. In *McLeod* v. *J. E. Dilworth Co.* (1944), 322 U.S. 327, the court struck down the application of an Arkansas taxing statute to a transaction in Tennessee and quoted the Arkansas Supreme Court opinion in that case with approval: " ' The distinguishing point between the *Berwind-White Coal* case and the cases at bar is that in the *Berwind-White Coal* case the corporation maintained its sales office in New York City, took its contracts in New York City and made actual delivery in New York City. * * *' 205 Ark. at 786. * * *" 322 U.S. 327, 329. The logic of those cases demonstrates that the assessment in this case is constitutional. Appellant maintained its office in Delaware, Ohio, made the contract in Ohio through the Columbus office of Fruehauf and, therefore, acquired title in Ohio. These facts are sufficient to satisfy the constitutional requirements of the Commerce Clause.

The majority's holding, therefore, invites Ohio companies to indulge in a taxpayer's charade. That is, a taxpayer may avoid sales tax altogether on personal property used in interstate commerce by contracting for the purchase in Ohio but securing evidence of ownership, such as a certificate of title, in one of our sister states in which the transfer of the certificate alone is not a taxable event for sales tax purposes. R.C. Chapters 5739 and 1302 define this transaction as being a taxable sale. It is regrettable that the majority holding creates a tax loophole which does not exist in the Revised Code.

Accordingly, we should affirm the decision of the Board of Tax Appeals.

KRUPANSKY, J., concurs in the foregoing dissenting opinion.