STANDARDS TESTING LABORATORIES, INC., APPELLEE,
*v.* ZAINO, TAX COMMR., APPELLANT.

[Cite as *Standards Testing Laboratories, Inc. v. Zaino,* 100 Ohio St.3d 240, 2003-Ohio-5804.]

(No. 2002–1420—Submitted October 20, 2003—Decided November 12, 2003.)

**Per Curiam.**

{¶ 1} Standards Testing Laboratories, Inc. ("STL") tests tire rims and tires. After a purchase audit by the Tax Commissioner, STL was assessed a use tax on its purchases of tires, wheels (also referred to as rims), lug nuts, and studs for the period April 1, 1991, through December 31, 1994.

{¶ 2} STL filed a petition for reassessment with the Tax Commissioner, contending that it purchased the tires, wheels, lug nuts, and studs for resale in the same form as received and, therefore, the sales should be excepted from taxation as sales for resale. The Tax Commissioner affirmed his assessment, finding that STL purchased the materials in question for testing purposes and that it was the consumer and, therefore, the sale-for-resale exception was not applicable.

{¶ 3} STL appealed from the Tax Commissioner's decision to the Board of Tax Appeals ("BTA"). The BTA reversed the Tax Commissioner, finding that the tires, rims, lug nuts, and studs purchased by STL were purchased with the primary intent to resell them in the same form as received.

{¶ 4} When STL tests rims for its customers, tires are mounted on the rims. When a customer wants a rim tested, it sends the rim to STL along with a request stating the specific tests that it wants conducted. Some customers send tires along with the rims they want tested. However, sometimes customers do not send enough tires to complete the tests, and additional tires have to be purchased for them by STL. Other customers do not send any tires with the rims.

{¶ 5} STL has a standing agreement with one major customer that STL is to obtain the tires it believes are needed for testing a rim and immediately bill the customer for the cost of the tires plus a markup. For other customers that do not initially furnish any tires or do not furnish enough tires to complete the testing, STL contacts the customer to obtain its permission to purchase the needed tires and to bill it. If a customer says no to STL's request for permission to purchase, STL tells the customer how many tires the customer needs to furnish. Likewise, when a customer specifies that special lug nuts or special studs (collectively referred to as "special parts") are to be used in running a test, and they are not furnished by the customer, STL contacts the customer to obtain its permission to purchase those special parts. STL never purchases tires ahead with the expectation of selling them to a customer. All the tires purchased by STL are purchased for a customer's test and billed to a customer. If the required tires or special parts are not furnished by the customer, STL cannot do the testing.

{¶ 6} When STL purchases tires, it provides its seller with a blanket exemption certificate stating that the sale is a sale for resale. STL does not bill its customers for any sales or use tax, because its customers have provided it with either a direct pay permit number or some other claim of exemption.

{¶ 7} When the tires are delivered to STL, whether those furnished directly by the customer, those furnished by the customer through delivery from a manufacturer, or those purchased by STL for the customer, they are marked to identify them as belonging to a particular customer. Any tires not used in the testing are stored in STL's warehouse for future use by the customer or otherwise disposed of as directed by the customer. Tires purchased for one customer are never used for another customer. All tires, whether initially furnished by the customer or purchased for the customer by STL, that are destroyed or used up during the testing are scrapped by STL, and the state-mandated disposal fee is charged to the customer.

{¶ 8} When STL purchases tires or special parts for its customers, it bills the customers at STL's cost plus a markup. Except for the one major customer that is billed for tires at the time of STL's purchase, other customers are billed for the tires and special parts when STL bills for the testing. However, when the

charges for the tires or special parts are shown on the same bill as the charges for testing, they are itemized and stated separately from the testing charges.

{¶ 9} This cause is now before the court upon an appeal as of right.

{¶ 10} In reviewing decisions of the BTA, we determine whether the BTA's decision is reasonable and lawful. We stated our role in *Strongsville Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision* (1997), 77 Ohio St.3d 402, 405, 674 N.E.2d 696:

{¶ 11} "[W]e affirm the BTA's basic factual findings if sufficient, probative evidence of record supports these findings. We also affirm the BTA's rulings on credibility of witnesses and weight attributed to evidence if the BTA has exercised sound discretion in rendering these rulings. Finally, we affirm the BTA's findings on ultimate facts, *i.e.*, factual conclusions derived from given basic facts, *Ace Steel Baling, Inc. v. Porterfield* (1969), 19 Ohio St.2d 137, 142, 48 O.O.2d 169, 171–172, 249 N.E.2d 892, 895–896, if the evidence the BTA relies on meets these above conditions, and our analysis of the evidence and reading of the statutes and case law confirm its conclusion."

{¶ 12} The question presented by this case is whether the transactions between STL and its customers were sales for resale. Although the tax in question is a use tax, we will discuss only sales tax provisions because R.C. 5741.02(C)(2) excepts from the use tax the acquisition of tangible personal property which if made in Ohio would be a sale not subject to the sales tax imposed by R.C. Chapter 5739.

{¶ 13} The Tax Commissioner contends that the purchases in question, i.e., tires, wheels, and special parts, are not entitled to the sale-for-resale exception, because there was no sale of these items by STL to its customers.

{¶ 14} The sale-for-resale exception in R.C. 5739.01(E)(1) provides:

{¶ 15} "(E) 'Retail sale' and 'sales at retail' include all sales except those in which the purpose of the consumer is:

{¶ 16} "(1) To resell the thing transferred * * * by a person engaging in business, in the form in which the same is, or is to be, received by the person[.]"

{¶ 17} The term "sale" is defined in R.C. 5739.01(B)(1):

{¶ 18} "(B) 'Sale' and 'selling' include all of the following transactions for a consideration in any manner, whether absolutely or conditionally, whether for a price or rental, in money or by exchange, and by any means whatsoever:

{¶ 19} "(1) All transactions by which title or possession, or both, of tangible personal property, is or is to be transferred, or a license to use or consume tangible personal property is or is to be granted[.]"

{¶ 20} When STL purchases tires or special parts for a customer, it does so either pursuant to a standing agreement with its customer concerning such

purchases or after it contacts the customer and receives permission to make the purchase. In order for there to be a resale of tires or special parts by STL to its customer, there has to be a transfer of title or possession from STL to its customer. There are no title documents for the items in question, and there is no change of possession from STL to its customer. Nevertheless, a determination must be made as to whether there has been a transfer of title from STL to its customer.

{¶ 21} Unfortunately, the sales tax statutes do not define "title." However, in prior cases we have consulted R.C. 1302.42 when we have needed to determine whether title has transferred for sales tax purposes. *PPG Industries, Inc. v. Lindley* (1982), 1 Ohio St.3d 212, 1 OBR 237, 438 N.E.2d 907; *Arga Co. v. Limbach* (1988), 36 Ohio St.3d 220, 522 N.E.2d 1074; *Wheeling Steel Corp. v. Porterfield* (1970), 21 Ohio St.2d 57, 50 O.O.2d 135, 255 N.E.2d 257.

{¶ 22} R.C. 1302.42(B), which deals with the passing of title, provides:

{¶ 23} "(B) Unless otherwise explicitly agreed, title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods * * *."

{¶ 24} STL made agreements with its customers that it would purchase tires and special parts and sell them to the customer so the items could be furnished to STL for its use in the testing requested by the customer. STL contends that it made these purchases and resold them to its customer as an accommodation because if the items were not furnished by the customer, STL could not perform the testing.

{¶ 25} In addition to having STL procure the tires and special items needed to perform the testing requested by the customer, STL's customers also furnished STL with the tires and special parts in other ways. Sometimes customers sent the tires and special parts to STL when they sent their rims for testing. Other times, customers had the tires sent directly to STL from a tire manufacturer. Whichever of these procedures was used, title to the tires and special parts furnished to STL remained with the customer.

{¶ 26} At the time the parties made their agreement for STL to purchase the tires and special parts for the customers, STL did not have the tires or special parts. Therefore, there could be no transfer of title from STL to its customer at that time. However, when STL purchased the tires and special parts from its vendors and had them delivered, title passed to STL.

{¶ 27} Once STL received the items, it could have shipped the items to its customer and there would be no question that the customer obtained title to the items upon delivery from STL. Likewise, there would be no question that there had been a sale for resale from STL to its customer. However, that procedure

would have been costly, time-consuming, and improvident. Instead, the parties chose a procedure that achieved the same result but did not require shipping and returning the items to STL. When STL took delivery from its vendor, it also simultaneously completed its performance and delivery to its customer under their agreement. When STL completed delivery under the agreement, title passed to the customer. Thus, there was a transfer of title to the items from STL to its customer for a consideration, and STL was entitled to except its initial purchase as a sale for resale.

{¶ 28} The Tax Commissioner cites *NLO, Inc. v. Limbach* (1993), 66 Ohio St.3d 389, 613 N.E.2d 193, as controlling in this case. We, disagree, however, because the facts in this case are different. In *NLO*, the United States Department of Energy ("DOE") installed NLO as operator in one of its plants and agreed to buy all of the production of the plant. Based on these facts, we applied our prior decision in *Gen. Motors Corp. v. Kosydar* (1974), 37 Ohio St.2d 138, 66 O.O.2d 304, 310 N.E.2d 154, and determined that the requirements contract in *Gen. Motors Corp.* was analogous and found that DOE purchased the disputed items and resold them to NLO. Thus, the purchases by the DOE were excepted under the sale-for-resale exception while the transfers to NLO were taxable. The fact situation in this case is entirely different from *NLO*. There is no supply-type contract involved here as there was in *NLO*.

{¶ 29} The Tax Commissioner also contends that STL failed to meet its burden of proof with respect to the wheels and special parts in question.

{¶ 30} The burden of proof at the BTA was on STL to show the manner and extent of the error in the Tax Commissioner's final determination. *Federated Dept. Stores, Inc. v. Lindley* (1983), 5 Ohio St.3d 213, 215, 5 OBR 455, 450 N.E.2d 687. Thus, STL had to show before the BTA that the wheels and special parts were resold to its customers.

{¶ 31} The BTA found that the wheels and special parts were resold. While the record contains evidence relating to special parts from which this determination could be made by the BTA, it is devoid of any evidence from which the determination could be made regarding wheels. In *Citizens Financial Corp. v. Porterfield* (1971), 25 Ohio St.2d 53, 54 O.O.2d 191, 266 N.E.2d 828, we held in paragraph two of the syllabus, "Where a material portion of a Board of Tax Appeals decision is not supported by any probative evidence of record, the decision is unreasonable and unlawful."

{¶ 32} For all of the foregoing reasons, the decision of the BTA in granting the sale-for-resale exception for the tires and special parts was reasonable and lawful and is hereby affirmed, and the decision of the BTA in granting the sale-for-

resale exception for the wheels was unreasonable and unlawful and is hereby reversed.

Decision affirmed in part
and reversed in part.

MOYER, C.J., RESNICK, F.E. SWEENEY and O'DONNELL, JJ., concur.

PFEIFER, LUNDBERG STRATTON and O'CONNOR, JJ., concur in part and dissent in part.

---

**LUNDBERG STRATTON, J., concurring in part and dissenting in part.**

{¶ 33} I concur with the majority that the sale-for-resale exception applies to tires and other parts; however, I respectfully dissent from the decision to reverse the application of the exception to wheels. The majority concludes that the record was devoid of evidence from which to determine whether wheels, like the tires and other special parts used in the testing, were purchased for resale to customers. I disagree.

{¶ 34} Upon review of the record in its entirety, I believe that the evidence supports the BTA's conclusion that STL's purchase of tires and other parts used in the testing process, including wheels, was at the request of customers and considered resold to those customers. Furthermore, it defies common sense that the tax exception would apply to tires and other parts but not also to the wheels.

{¶ 35} In order to perform testing, STL had to acquire the wheel, a tire to put on the wheel, and, at times, certain lug nuts and studs. All these items were necessary to conduct the testing. STL admits that a significant portion of the evidence addressed tires because they accounted for the majority of the assessed tax. However, STL's counsel stated at the outset of the BTA hearing that the issue involved the purchases of several items, not just tires: "Let me state preliminarily * * * we're talking about the purchase of several different kinds of items, not just tires, but just for purposes of saving us time, I'm going to talk about tires, * * * but I'm not going to go through the whole litany each time."

{¶ 36} STL's CEO and CFO testified that STL bought tires and wheels to accommodate the customer. STL specifically delineated wheels in its petition for reassessment. Neither the hearing examiner nor the BTA had difficulty following that concept. There is nothing in the record that differentiates STL's treatment of wheels from its treatment of other parts used in the testing process. They were a necessary part of the process and acquired similarly to tires and other items. Yet the majority of this court construed the record as devoid of evidence concerning the wheels.

{¶ 37} It is not the role of this court to substitute its judgment for that of the BTA on factual issues unless the BTA's decision is unreasonable or unlawful. *Citizens Financial Corp. v. Porterfield* (1971), 25 Ohio St.2d 53, 54 O.O.2d 191, 266 N.E.2d 828, paragraph one of the syllabus. The BTA correctly concluded that STL purchased wheels, lug nuts, and studs, like the tires, for resale to customers. This conclusion is supported by the evidence and is not unreasonable or unlawful. Therefore, I respectfully dissent and would affirm the decision of the BTA in toto.

PFEIFER and O'CONNOR, JJ., concur in the foregoing opinion.

_____

Ulmer & Berne, L.L.P., Lewis T. Barr and Ronald H. Isroff, for appellee.

Jim Petro, Attorney General, and Duane M. White, Assistant Attorney General, for appellant.