HEALTHSOUTH CORPORATION, APPELLEE, *v.* TESTA,

TAX COMMR., APPELLANT.

[Cite as *HealthSouth Corp. v. Testa,* 132 Ohio St.3d 55, 2012-Ohio-1871.]

*Property tax—Application for reassessment—Burden of proof—Evidentiary decisions by Board of Tax Appeals—Standard of review of decisions of Board of Tax Appeals.*

(No. 2010-1916—Submitted February 8, 2012—Decided May 2, 2012.)

APPEAL from the Board of Tax Appeals, No. 2005-A-1386.

_____

**Per Curiam.**

{¶ 1} This personal-property-tax case comes to the court for the second time on appeal from the Board of Tax Appeals ("BTA"). For tax year 2002, HealthSouth Corporation claims that as a result of massive accounting fraud, it reported fictitious personal-property assets at its physical-rehabilitation, outpatient-surgery, sports-medicine, and other facilities in various Ohio taxing districts. HealthSouth subsequently filed an application for final assessment for 2002 in order to obtain from the tax commissioner a new assessment that would reduce the taxable value in various taxing districts by removing fictitious assets. The new assessment would in turn permit it to obtain refunds of overpayments for that year from the local taxing districts. The BTA issued a decision that reversed the commissioner's refusal to grant such a reassessment. *HealthSouth Corp. v. Levin*, BTA No. 2005-A-1386, 2007 WL 3407988 (Nov. 9, 2007).

{¶ 2} The tax commissioner appealed. In *HealthSouth Corp. v. Levin*, 121 Ohio St.3d 282, 2009-Ohio-584, 903 N.E.2d 1179, we rejected the tax commissioner's primary claim that because HealthSouth's value-reduction claim arose from its own accounting fraud, that claim was barred either by the statute or

by the doctrine of estoppel. We did hold, however, that the BTA's disposition failed to explain why certain objections to the evidence offered by HealthSouth should be overruled. *Id*. at ¶ 31, 35. We remanded with the instruction that the BTA "complete its fact-finding" by explicitly addressing the commissioner's objections. *Id.* at ¶ 36.

{¶ 3} After permitting the parties to submit additional briefs, the BTA issued its decision on October 6, 2010. *HealthSouth Corp. v. Wilkins*, BTA No. 2005-A-1386, 2010 WL 4162429 (Oct. 6, 2010). In that decision, the BTA made two key findings: (1) that "HealthSouth has sufficiently established that the assets designated as 'AP SUMMARY' never existed and therefore, should be removed from the subject assessment" and (2) that "HealthSouth has met its burden of proof with regard to establishing that the denial of its refund request was improper." *Id*. at *6. The BTA regarded the record as the "starting point or underlying source of information for the amended filing," and it remanded to the commissioner "for calculation of the refund due to the taxpayer HealthSouth." *Id*.

{¶ 4} For the second time, the tax commissioner has appealed. In this appeal, the commissioner asserts that the BTA lacked sufficient evidence for its findings. We disagree. Reviewing the BTA's decision with maximum deference to that body's weighing of the evidence, we conclude that the BTA acted reasonably and lawfully in remanding the cause to the commissioner for a determination of a reduced tax assessment. We therefore affirm the decision of the BTA.

## I. Factual Background

{¶ 5} We discussed the factual background of this case in greater detail in our earlier decision and rely on that discussion here. *HealthSouth Corp.*, 121 Ohio St.3d 282, 2009-Ohio-584, 903 N.E.2d 1179, ¶ 8-10.

{¶ 6} The evidence before the BTA included the transcript certified by the tax commissioner, which included the original 2002 return and supporting

material such as balance sheets and asset lists for each Ohio facility. The statutory transcript also contained HealthSouth's application for final assessment along with a set of spreadsheets called "Amended Fixed Assets," which encompassed 118 pages and was prepared by an outside consultant. The first page of the fixed-asset list summarized the claim, and it showed that previously returned value should be reduced in each taxing district by amounts associated with the "AP SUMMARY" entries. The claim would, if successful, reduce the total assessed value to $2,556,948—a requested reduction of more than half the value that was originally assessed.

{¶ 7} Additionally, the BTA had before it the testimony of Michael D. Martin, a HealthSouth vice-president of tax. HealthSouth also presented exhibits at the hearing as a basis for reducing the value reported at Ohio facilities for tax year 2002. The tax commissioner objected to the evidence but did not file a posthearing brief in support of his position.

{¶ 8} The BTA reversed and ordered that the commissioner reduce the 2002-tax-year assessment. *HealthSouth Corp. v. Wilkins*, BTA No. 2005-A-1386, 2007 WL 3407988 (Nov. 9, 2007). On appeal, the tax commissioner asserted that HealthSouth could not alter its 2002 assessment because its reporting of fictitious assets constituted part of a deliberate corporate fraud. After rejecting that argument, we vacated and remanded so that the BTA could "complete its fact-finding." 121 Ohio St.3d 282, 2009-Ohio-584, 903 N.E.2d 1179, ¶ 36.

{¶ 9} On remand, the BTA found that HealthSouth had presented sufficient evidence, and remanded to the commissioner so that that official could issue a reduced tax assessment. *HealthSouth Corp.*, 2010 WL 4162429, *6 (Oct. 6, 2010). The commissioner has appealed.

## II.  Analysis

### A.  The standard of review

{¶ 10} When confronted with a claim for reduction of a tax assessment, we recognize that the burden of proof at the BTA "rests on the taxpayer 'to show the manner and extent of the error in the Tax Commissioner's final determination.' "  *A. Schulman, Inc. v. Levin*, 116 Ohio St.3d 105, 2007-Ohio-5585, 876 N.E.2d 928, ¶ 7, quoting *Stds. Testing Laboratories, Inc. v. Zaino*, 100 Ohio St.3d 240, 2003-Ohio-5804, 797 N.E.2d 1278, ¶ 30.  We must affirm the BTA's findings of fact if they are supported by reliable and probative evidence, and we afford deference to the BTA's determination of the credibility of witnesses and its weighing of the evidence subject only to an abuse-of-discretion review on appeal.  R.C. 5717.04; *Olentangy Local Schools Bd. of Edn. v. Delaware Cty. Bd. of Revision*, 125 Ohio St.3d 103, 2010-Ohio-1040, 926 N.E.2d 302, ¶ 15.  The function of weighing evidence and determining credibility belongs to the BTA, and therefore our review of that aspect of its findings is, as already noted, highly deferential.  *See Highlights for Children, Inc. v. Collins*, 50 Ohio St.2d 186, 187-188, 364 N.E.2d 13 (1977).

{¶ 11} In this case, we must determine whether the BTA's findings are supported by reliable and probative evidence.  *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14.  But if a " 'material portion of a Board of Tax Appeals decision is not supported by any probative evidence of record, the decision is unreasonable and unlawful.' "  *Stds. Testing Laboratories, Inc.*, 100 Ohio St.3d 240, 2003-Ohio-5804, 797 N.E.2d 1278, ¶ 31, quoting *Citizens Fin. Corp. v. Porterfield*, 25 Ohio St.2d 53, 266 N.E.2d 828 (1971), paragraph two of the syllabus.

## B. Reliable and probative evidence supported the BTA's findings

### 1. Under the case law, the court reverses BTA findings only
### in the total absence of supporting evidence

{¶ 12} We have stated that evidence is reliable if it is "dependable; that is, it can be confidently trusted," a standard that is satisfied if there is "a reasonable probability that the evidence" establishes an asserted fact to be true. *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571, 589 N.E.2d 1303 (1992). We have stated that evidence is probative if it "tends to prove the issue in question; it must be relevant in determining the issue." *Id.* In other words, a document or testimony is reliable if it can be depended on to state what is true, and it is probative if it has the tendency to establish the truth of relevant facts.

{¶ 13} The rules of evidence, including the hearsay rule, do not control administrative hearings, but the agency may consult the rules for guidance. Evid.R. 101(A); *Plain Local Schools v. Franklin Cty. Bd. of Revision*, 130 Ohio St.3d 230, 2011-Ohio-3362, 957 N.E.2d 268, ¶ 20.[1] The BTA was therefore permitted to rely on hearsay, and the BTA had authority to instruct the commissioner to do so when it ordered a remand in this case. As a result, evidence that would be excluded as hearsay in a civil or criminal case may be admitted and considered under the relaxed standards of administrative proceedings.

{¶ 14} Moreover, our case law establishes that we will reverse BTA findings only when there is a total absence of evidence to support a particular finding. *See Citizens Fin. Corp.*, 25 Ohio St.2d 53, 266 N.E.2d 828, paragraph two of the syllabus ("Where a material portion of a Board of Tax Appeals

---

1. Because R.C. 5717.02 generally requires the BTA to "order the hearing of additional evidence" based on the "application of any interested party," and because the Rules of Evidence do not directly apply in administrative proceedings, we focus our attention not on whether the BTA abused its discretion in admitting evidence over objection, but rather on whether reliable and probative evidence supported the BTA's findings.

decision is not supported by *any* probative evidence of record, the decision is unreasonable and unlawful" [emphasis added]); *Fed. Paper Board Co. v. Kosydar*, 37 Ohio St.2d 28, 306 N.E.2d 416, paragraph two of the syllabus (same).

*2. Evidence supported the BTA's finding that*
*"AP SUMMARY" assets were fictitious*

{¶ 15} The BTA concluded that "HealthSouth has sufficiently established that the assets designated as 'AP SUMMARY' never existed and therefore, should be removed from the subject assessment." *HealthSouth Corp. v. Levin*, BTA No. 2005-A-1386, 2010 WL 4162429, *6 (Oct. 6, 2010). The BTA's finding is grounded on HealthSouth's Exhibit 1 at the BTA hearing, the Form 8-K filed with the SEC in June 2004, and Exhibit 5, the Form 10-K filed with the SEC that covered fiscal years ending in 2003 and 2002, with a restatement of financials for years ending in 2001 and 2000.

{¶ 16} According to these documents, a Special Audit Review Committee had examined the corporation's accounting for the period 1996 through 2002, determining that "accounting fraud at HealthSouth was by any standard both enormous and complex." In order to inflate earnings, revenues and expenses were misstated, a fraud that involved making over $2.7 billion in false or unsupported entries in the accounting systems. The concealment of revenue-inflation involved transfers out of a corporate suspense account onto the balance sheets of facilities. Because the adjustments were so large, the corporation used fixed-asset accounts; it fabricated property, plant, and equipment of HealthSouth facilities in a manner described in HealthSouth's June 2004 Form 8-K.

{¶ 17} According to the committee's report, "[n]early all of the fictitious assets" were processed to the general ledger and identified, for the most part, as "AP SUMMARY." Thereafter, those fictitious assets were "recorded as one or more assets in the fixed asset system," with large AP SUMMARY entries being

separated into a number of assets with lesser dollar values. Sometimes the assets retained the AP SUMMARY designation, and other times they were "identified as furniture, computer equipment, or similar items that a facility would be expected to use."

**{¶ 18}** The tax commissioner contends that the cited passages of the Form 8-K cannot be regarded as reliable and probative evidence because they are hearsay and not substantiated by personal-knowledge testimony of witnesses called to testify to the BTA. We disagree.

**{¶ 19}** First, it is a public filing that provides the sort of information that, in the absence of contravening evidence, may be relied upon as the grounds for assessment.

**{¶ 20}** Second, filings at the Securities and Exchange Commission possess indicia of reliability because they are generated during the course of business for business purposes and involve the assembling of data from business-record sources by persons who have a business duty to assemble such data. See Evid.R. 803(6); *Plain Local Schools*, 130 Ohio St.3d 230, 2011-Ohio-3362, 957 N.E.2d 268, ¶ 21 (no plain error in considering hearsay where testimony established the appraisal report as having been generated in the course of business for a specific business purpose); *Charter Communications Properties, L.L.C. v. San Luis Obispo Cty.*, 198 Cal.App.4th 1089, 1102, 131 Cal.Rptr.3d 455 (2011) (taxpayer's Form 10-K statements in conjunction with assessor's hearsay testimony furnished a substantial evidentiary basis for the determination of a material fact in valuing cable franchises for tax purposes); *Diamond v. Davis*, 38 N.Y.S.2d 93, 98-100 (1942), *affirmed without opinion*, 265 A.D. 919, 39 N.Y.S.2d 412 (1942), *affirmed without opinion*, 292 N.Y. 552, 54 N.E.2d 683 (1944) (filings at Securities and Exchange Commission held competent to prove lack of ownership).

**{¶ 21}** We conclude that the BTA had reliable and probative evidence to support the finding that "AP SUMMARY" assets never existed and that they should be removed from the assessment.

*3. Evidence supported the BTA's finding that the "AP SUMMARY"*

*assets could be removed by taxing district*

**{¶ 22}** The BTA also found that HealthSouth had "met its burden of proof with regard to establishing that the denial of its refund request was improper," and we hold that the BTA did not abuse its discretion in concluding that the evidence in the record furnished an adequate basis to permit the tax commissioner to reduce the assessment as to each taxing district on remand.

**{¶ 23}** The record includes three layers of evidence concerning the value associated with "AP SUMMARY" assets in each taxing district, as reported in the 2002 return. First, with the return itself HealthSouth submitted asset lists that designated certain reported assets as "AP SUMMARY" and did so on a facility-by-facility basis. Second, in conjunction with its application for final assessment before the commissioner, HealthSouth presented a summary of assets showing "AP SUMMARY" assets to be removed for each facility. Third, at the BTA hearing, HealthSouth presented exhibits that purport to tie fictitious assets with the facilities in the particular taxing districts, based on forensic accounting and a "bag and tag" inventory of assets.

**{¶ 24}** The tax commissioner contends that HealthSouth's witness at the BTA hearing, Michael Martin, lacked personal knowledge about the 2002 return because he had served in sales and use tax compliance until April 2003, at which time he took charge of property taxes at the company. Nevertheless, by the time of the BTA hearing on February 22, 2007, Martin had headed the property-tax unit for almost four years; he was therefore familiar as a general matter with property-tax compliance.

**{¶ 25}** We conclude that Martin's testimony and the three layers of documentation satisfy the minimal legal standard of reliability. The BTA hearing exhibits allegedly based on the restated financials can be cross-checked against the documentation submitted with the 2002 return and the computation submitted in connection with the application for final assessment. The asset breakout filed along with the 2002 return shows the increments of taxable value associated with "AP SUMMARY" assets for each facility, which supplies at least a point of reference for evaluating other evidence of the value in the taxing districts.

**{¶ 26}** Moreover, consideration of the documentation submitted with the 2002 return does not depend on Martin's testimony for its foundation, since its inclusion in the statutory transcript makes it part of the evidentiary record in spite of its hearsay character. *See Simon v. Lake Geauga Printing Co.*, 69 Ohio St.2d 41, 44, 430 N.E.2d 468 (1982) (when items are certified as part of an administrative record to a higher tribunal, "evidence which might constitute inadmissible hearsay where stringent rules of evidence are followed must be taken into account"). Furthermore, the commissioner himself relied on the original 2002 report as the basis for the final assessment and now cannot claim that the asset lists associated with the 2002 return have no evidentiary value whatsoever. *Compare Cleveland v. Posner*, 193 Ohio App.3d 211, 2011-Ohio-1370, 951 N.E.2d 476, ¶ 28 (the documentation underlying a public agency's determination is usually "admissible and prima facie evidence of what it asserts in an administrative hearing").

**{¶ 27}** The commissioner cites *United Tel. Co. of Ohio v. Tracy*, 84 Ohio St.3d 506, 705 N.E.2d 679 (1999), and *MCI Metro Access Transm. Servs.*, *L.L.C. v. Levin,* 10th Dist. Nos. 07AP-398 and 07AP-399, 2008-Ohio-5057, 2008 WL 4416665, as authority. In *United Tel. Co.*, the plurality stated that a taxpayer could not rely on a statistical sampling method to prove the value associated with nontaxable property when there were documents available from which an accurate

count could be computed. *Id.* at 512. Because no statistical sampling method is at issue in this case, *United Tel. Co.* is inapposite.

{¶ 28} Likewise, the taxpayer in *MCI Metro Access* sought a reduction in value associated with Ohio property by applying a write-down percentage from its worldwide holdings and applying it to Ohio assets. Unlike the taxpayer in that case, HealthSouth is not trying to apply a write-down percentage derived from its worldwide holdings and operations to its Ohio facilities. Instead, the record here contains documentation showing the fictitious assets originally reported at Ohio facilities.

{¶ 29} The commissioner has not shown the BTA decision to be unreasonable or unlawful, and therefore, we affirm. R.C. 5717.04.

### C. The commissioner's other arguments furnish no basis for reversal

{¶ 30} The commissioner claims that the 2002 returns are not reliable evidence because they were tainted with corporate fraud and were signed by Richard Botts, the former tax manager who was subsequently convicted of fraud. As a result, the commissioner argues, there can be no change in the 2002 assessment without completely reconstructing the value of personal property in each taxing district as of the 2002-tax-year lien date, December 31, 2001.

{¶ 31} This contention is barred by the law-of-the-case doctrine.[2] *Hopkins v. Dyer*, 104 Ohio St.3d 461, 2004-Ohio-6769, 820 N.E.2d 329, ¶ 15. In the first appeal to this court, the commissioner confined himself to the contention

---

2. We are justified in raising the doctrine sua sponte because we have held that the law-of-the-case doctrine reflects a strong public policy to " 'ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts.' " *Brothers v. Morrone-O'Keefe Dev. Co.*, 10th Dist. No. 06AP-713, 2007-Ohio-1942, ¶ 35, quoting *Hubbard ex rel. Creed v. Sauline*, 74 Ohio St.3d 402, 404, 659 N.E.2d 781 (1996). On that basis, it is proper that the doctrine be raised sua sponte. *See DiLaura v. New York Power Auth.*, 982 F.2d 73, 76 (2d Cir.1992); *Maxfield v. Cintas Corp.*, 487 F.3d 1132, 1135 (8th Cir.2007); *Bollinger v. Oregon*, 172 Fed.Appx. 770, 771 (9th Cir.2006); *United States v. Wallace*, 573 F.3d 82, 90 (1st Cir.2009), fn. 6.

that HealthSouth had not adequately proved the quantitative effect of fictitious assets on the property value in each taxing district. He failed to argue that HealthSouth had neglected to shoulder the burden to prove that its 2002 return was correct with respect to nonfictitious assets. The commissioner is precluded from asserting an argument in this second appeal that could and should have been raised, but was not, during the first appeal. *Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 129 Ohio St.3d 3, 2011-Ohio-2316, 949 N.E.2d 986, ¶ 22, fn. 2; *accord Pollock v. Cohen*, 32 Ohio St. 514, 519 (1877) ("all questions which existed on the record, and could have been considered on the first petition in error, must ever afterward be treated as settled by the first adjudication of the reviewing court").

{¶ 32} The commissioner also contends that HealthSouth failed to present "any of the necessary journal entries, balance sheets or other 'final results' evidence that HealthSouth would have been required to have created and maintained under generally accepted accounting principles (GAAP) and SEC regulations had it overstated its Ohio asset values." According to the commissioner, this should be fatal to its claim for relief.

{¶ 33} No statute or administrative rule specifically conditions HealthSouth's right to relief on producing such documentation. It is well settled that the commissioner is free to adopt routine practices to guide the exercise of his discretion, *see J.M. Smucker, L.L.C. v. Levin*, 113 Ohio St.3d 337, 2007-Ohio-2073, 865 N.E.2d 866, ¶ 19, but also that the commissioner cannot confer the force of law on a requirement without promulgating it as a rule. *McLean Trucking Co. v. Lindley*, 70 Ohio St.2d 106, 114-116, 435 N.E.2d 414 (1982); *Condee v. Lindley*, 12 Ohio St.3d 90, 92-93, 465 N.E.2d 450 (1984). Absent such a law or regulation, HealthSouth's failure to produce such evidence does not doom its claim.

### III.  Conclusion

{¶ 34} Because the BTA acted reasonably and lawfully when it reversed the tax commissioner's denial of HealthSouth's application for a value reduction, we affirm the decision of the BTA.  The commissioner shall exercise his discretion on remand to determine a reduced tax assessment.

Decision affirmed.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Siegel, Siegel, Johnson & Jennings Co., L.P.A., J. Kieran Jennings III, Jay P. Siegel, and Jason P. Lindholm, for appellee.

Michael DeWine, Attorney General, and Barton A. Hubbard, Assistant Attorney General, for appellant.

_____