[Cite as *Fox v. Huron City School Dist. Bd. of Edn.*, 2017-Ohio-7984.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

Frederick M. Fox

      Appellee/Cross-Appellant

v.

Board of Education of the
Huron City School District, et al.

      Appellant/Cross-Appellee

Court of Appeals Nos. E-16-076
E-16-077

Trial Court No. 2013-CV-0318

**<u>DECISION AND JUDGMENT</u>**

Decided: September 29, 2017

* * * * *

James L. Murray, W. Patrick Murray and William H. Bartle,
for appellee/cross-appellant.

Lisa E. Pizza, Teresa L. Grigsby and Joan C. Szuberla, for
appellant/cross-appellee.

* * * * *

**OSOWIK, J.**

**{¶ 1}** This is a consolidated appeal from a judgment of the Erie County Court of

Common Pleas which reversed the decision of appellant/cross-appellee to terminate the

employment contract of appellee/cross-appellant pursuant to R.C. 3319.16. For the reasons set forth below, this court reverses the judgment of the common pleas court.

{¶ 2} On April 29, 2013, Frederick M. Fox ("Fox") filed a complaint (case No. 2013-CV-0318) with jury demand against the Board of Education of the Huron City School District ("Huron") and co-defendants Timothy M. Sowecke ("Sowecke"), Scott J. Slocum ("Slocum"), and Donna L. Green ("Green"), each individually and as members of Huron, setting forth nine counts: wrongful termination under R.C. 3319.16 (Count 1), violation of Ohio's Sunshine Laws (Count 2), wrongful termination in violation of Ohio's public policy (Count 3), intentional interference with a contractual/business relationship (Count 4), defamation (Count 5), intentional infliction of emotional distress (Count 6), invasion of privacy (false light) (Count 7), civil conspiracy (Count 8), and punitive damages (Count 9). Fox and Huron entered into a superintendent employment contract through July 31, 2014. Fox alleged he suffered damages relating to and arising from the illegal conduct of Huron and co-defendants with respect to his April 2, 2013 termination from his position as Huron's superintendent. Huron and co-defendants generally denied the allegations.

{¶ 3} Concurrently with this case, Fox filed a libel, defamation and civil conspiracy complaint against Sowecke, Slocum and Green, both individually and as members of Huron, known as case No. 2012-CV-0695. The parties conducted discovery set forth in the common pleas court's scheduling orders in both cases, and discovery

2.

disputes ensued.[1]  Following a motion in this case to dismiss all counts filed by Huron

and the co-defendants, which Fox opposed, on December 2, 2014, the common pleas

court granted the motion in part and denied it in part.  As a result of the common pleas

court's judgment entry, only Counts 1 and 2 proceeded in this case with the remaining

counts either dismissed or joined with case No. 2012-CV-0695.

{¶ 4} Discovery among the parties continued, and on July 15, 2015, Huron and the

co-defendants filed a motion for summary judgment for Count 2, which Fox opposed,

and which the common pleas court denied on August 21, 2015.[2]  Thereafter, on

March 15, 2016, Fox dismissed with prejudice Count 2, leaving only Count 1 active in

this case.

{¶ 5} The parties submitted briefs and supplemental evidence to the common pleas

court as to Count 1.  On June 7, 2016, the common pleas court ordered the reversal of

Fox's termination and his reinstatement as superintendent.[3]  Following additional briefing

---

[1] The co-defendants and Huron appealed the denial of their motions to quash certain
subpoenas duces tecum in both case Nos. 2012-CV-0695 and 2013-CV-0318.  This court
consolidated and then, upon appellants' unopposed request, severed and dismissed both
appeals.  *See Fox v. Sowecke*, 6th Dist. Erie Nos. E-15-0053, E-15-0056 (Nov. 2, 2015).

[2] The co-defendants in case No. 2012-CV-0695 appealed the summary judgment denial
from the same order, and the appeal was assigned case No. E-15-0057.  This court
consolidated case No. E-15-0057 with case Nos. E-15-0053 and E-15-0056.  Upon the
severing of the consolidated appeals and appellants' subsequent notice of appeal
withdrawal, the pending appeal was dismissed.  *See Fox v. Sowecke*, 6th Dist. Erie No.
E-15-0057 (Feb. 8, 2016).

[3] Huron originally appealed, and Fox cross-appealed, the common pleas court's order,
which this court sua sponte dismissed on July 26, 2016, due to the lack of a Civ.R. 54(B)

and evidence regarding damages, as journalized on October 26, 2016, the common pleas court further awarded Fox record expungement, back pay with benefits plus pre-judgment interest totaling $268,197.23, and litigation costs of $4,082.14. Thereafter, on November 18, 2016, Huron filed its notice of appeal, which was assigned case No. E-16-076, and on November, 22, 2016, Fox filed his notice of cross-appeal, which was assigned case No. E-16-077. On December 9, 2016, this court ordered the consolidation of both appeals cases.

{¶ 6} Appellant Huron sets forth two assignments of error:

I. The Common Pleas Court erred by applying an improper standard of review when considering Frederick Fox's (Fox's) appeal from the decision by the Board of Education of the Huron City School District (Board or District) to terminate his employment pursuant to R.C. 3319.16.

II. Even if Fox's termination was improper (which it was not), the Common Pleas Court erred by awarding Fox pre-judgment interest, litigation expenses and medical insurance replacement costs.

{¶ 7} Cross-appellant Fox sets forth three assignments of error:

I. The Trial Court Erred By Failing to Award Cross-Appellant, Frederick Fox, Attorneys Fees.

---

certification. *See Fox v. Bd. of Educ. of the Huron City School District*, 6th Dist. Erie Nos. E-16-0042, E-16-0043.

4.

II.  The Trial Court Erred in Not Awarding Cross-Appellant, Frederick Fox, The Actual Cost of His Lost Family Health Care Insurance As Evidenced By What the Board Actually Paid For That Coverage.

III.  The Trial Court Erred in Not Awarding Cross-Appellant, Frederick Fox, As Damages The Additional Income Tax Liability Incurred As A Result Of The Board's Failure to Pay His Salary When Due Pursuant To The Terms Of The Parties' Five (5) Year Employment Contract.

{¶ 8} Appellant Huron's first assignment of error questions the standard of review applied by the common pleas court in its role as the reviewing court for Fox's appeal from the administrative decision by Huron to terminate Fox's employment contract.

{¶ 9} Huron argues that the common pleas court applied the facts improperly to the former version of R.C. 3319.16 to interpret there was a lack of "good and just cause" for Fox's termination.

{¶ 10} Huron further argues that the common pleas court failed to properly consider whether Huron's resolution and order for termination was supported by the weight of evidence in the record.  Rather, the common pleas court only considered whether the referee's report and recommendation could find support in the record and relied on the referee's comments about Huron's investigation of the allegations that preceded the disciplinary charges against Fox.

{¶ 11} Fox argues that the common pleas court properly applied the legal standard of review.

5.

**{¶ 12}** R.C. Chapter 3319 governs the employment of superintendents, including the circumstances for a board of education's termination of the superintendent's employment contract. R.C. 3319.16. The statutory grounds for termination are stated as follows: "The contract of any teacher employed by the board of education of any city * * * may not be terminated except for good and just cause." *Id.* The definition of "teacher" includes superintendents. R.C. 3319.09(A).

**{¶ 13}** Although Huron is correct that applying facts to a statute normally presents a question of law where appellate review is de novo, *Metamora Elevator Co. v. Fulton Cty. Bd. of Revision*, 143 Ohio St.3d 359, 2015-Ohio-2807, 37 N.E.3d 1223, ¶ 19, the plain language of R.C. 3319.16 indicates the common pleas court and this court have different appellate roles. This court must read R.C. 3319.16 "in the manner which effectuates, rather than frustrates, the major purpose of the General Assembly." *Naylor v. Cardinal Local School Dist. Bd. of Edn.*, 69 Ohio St.3d 162, 168, 630 N.E.2d 725 (1994).

**{¶ 14}** Fox was Huron's superintendent at all times relevant to this case. One clear purpose of R.C. 3319.16 is to provide a superintendent subject to contract termination proceedings with due process in two steps: the option to demand a hearing before a referee whose duty is to ascertain the facts, and the school board's duty to interpret the significance of those facts. *Aldridge v. Huntington Local School Dist. Bd. of Edn.*, 38 Ohio St.3d 154, 158, 527 N.E.2d 291 (1988). It is undisputed these two required steps occurred in this case. First, on March 11, 2013, the referee issued a 50-page, double-spaced report and recommendation to Huron that Fox's employment contract

6.

should not be terminated. Second, on April 2, 2013, a majority of Huron voted to terminate Fox's employment contract in a 15-page, single-spaced Resolution No. 6472 containing findings of fact and conclusions which rejected the analysis and conclusions of the referee's report and recommendation.

{¶ 15} While the board must consider and weigh the referee's report and recommendation with due deference, the board is not bound by that recommendation, and the majority may accept or reject the referee's recommendation, unless such acceptance or rejection is contrary to law. *Graziano v. Bd. of Edn.*, 32 Ohio St.3d 289, 293, 513 N.E.2d 282 (1987); *Aldridge* at 158. When "a board of education determines to reject the recommendation given by the referee, the school board should, in the spirit of due process, articulate its reasons therefor." *Graziano* at 293. "It is the responsibility of the board to indicate whether it rejected a referee's findings as being against the preponderance of the evidence or accepted the referee's factual determination but rejected the referee's recommendation based upon a different interpretation of the significance of those facts." *Aldridge* at 158. Huron's Resolution No. 6472 articulated both, and is summarized in the twelfth conclusion:

It is the conclusion of the Board that Charges 1(a)-(e), 2(a)-(i), 3(c) and (d), and 4(a), (b), (d) and (e), as set forth in the September 6, 2012 resolution [No. 6392] and notice of charges, are supported by the preponderance of reliable, probative and substantial evidence on the record. The Board further concludes that Fox's conduct and the actions as

evidenced in the record constitute "good and just cause" to terminate Fox's contract of employment with the Board of Education. Ultimately, Resolution No. 6472 shows Huron dropped some charges against Fox.

{¶ 16} Following the board's determination, the superintendent affected by the board's order of termination may appeal to the court of common pleas by filing a complaint against the board which alleges facts upon which the superintendent "relies for a reversal or modification of such order of termination of contract." R.C. 3319.16. Count 1 of Fox's complaint satisfied this requirement.

{¶ 17} Thereafter, the statute compels the common pleas court "shall examine the transcript and record of the hearing and shall hold such additional hearings as it considers advisable, at which it may consider other evidence in addition to the transcript and record." *Id.* While the appeal to the common pleas court does not include a right to trial de novo, the court is empowered to hold additional hearings and consider other evidence. *Graziano* at 293. The common pleas court's role to weigh evidence and determine the credibility of witnesses is subject to a preponderance of evidence standard. *Id.*; *Hale v. Bd. of Edn.*, 13 Ohio St.2d 92, 97, 234 N.E.2d 583 (1968).

{¶ 18} It is well settled the common pleas court cannot substitute its judgment for the judgment of the board where a fair administrative hearing is had and there is substantial and credible evidence in the record to support the board's decision. *Speller* at ¶ 21; *Martin v. Bd. of Edn. of the Bellevue City School Dist.*, 6th Dist. Huron No.

8.

H-12-002, 2013-Ohio-4420, ¶ 18. The common pleas court improperly substituted its judgment in this case.

{¶ 19} It is undisputed that on June 7, 2016, the common pleas court ordered the reversal of Huron's decision to terminate Fox's employment contract and his reinstatement as superintendent. In its decision the common pleas court correctly identified a fair administrative hearing was had, and found there was substantial and credible evidence in the record to support the referee's report and recommendation. In its full review of the evidence and the parties' briefs, the common pleas court was unpersuaded Huron properly discharged its duty to consider and weigh the referee's report and recommendation with due deference. The common pleas court concluded the referee's report and recommendation was "overwhelmingly" supported by "competent, credible evidence in the record." The common pleas court further concluded "the [referee's] recommendation is not unlawful, unreasonable nor against the manifest weight of the evidence." The common pleas court further concluded Huron failed to meet its burden of proof "by a preponderance of substantial, reliable and probative evidence the facts and grounds to support its intended action to terminate the Superintendent's contract."

{¶ 20} The common pleas court's decision did not look to any portion of Huron's Resolution 6472, the specific resolution articulating the reasoning for Fox's order of termination. In Resolution No. 6472 Huron addressed and resolved the evidentiary conflicts from the referee's report and recommendation. The court of common pleas

9.

"must give due deference to the administrative resolution of evidentiary conflicts." *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 111, 407 N.E.2d 1265 (1980). The common pleas court's decision did not do so.

{¶ 21} The common pleas court's decision may be appealed by either the "teacher" or the board. R. C. 3319.16. In this case both did. Our review of the common pleas court's decision is limited to abuse of discretion when the common pleas court determined there was a lack of a preponderance of reliable, probative and substantial evidence to support Huron's order to terminate Fox's contract. *See Speller v. Toledo Pub. School Dist. Bd. of Edn.*, 2015-Ohio-2672, 38 N.E.3d 509, ¶ 22 (6th Dist.); *see also Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110-111, 407 N.E.2d 1265 (1980); *see also Kisil v. Sandusky*, 12 Ohio St.3d 30, 34-35, 465 N.E.2d 848 (1984). The common pleas court abuses its discretion where its decision is clearly erroneous in that it was a misapplication of the law to the facts of the case. *Ohio Civ. Rights Comm. v. Case W. Res. Univ.*, 76 Ohio St.3d 168, 177, 666 N.E.2d 1376 (1996); *Alexander v. Mt. Carmel Med. Ctr.*, 56 Ohio St.2d 155, 162, 383 N.E.2d 564 (1978).

{¶ 22} "The evidence required * * * can be defined as follows: (1) 'Reliable' evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) 'Probative' evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) 'Substantial' evidence is evidence with some weight; it must have importance and value." *Our Place, Inc. v. Ohio Liquor Control Com.*, 63 Ohio St.3d 570, 571, 589

10.

N.E.2d 1303 (1992). "In other words, a document or testimony is reliable if it can be depended on to state what is true, and it is probative if it has the tendency to establish the truth of relevant facts." *HealthSouth Corp. v. Testa*, 132 Ohio St.3d 55, 2012-Ohio-1871, 969 N.E.2d 232, ¶ 12. "The rules of evidence, including the hearsay rule, do not control administrative hearings, but the agency may consult the rules for guidance. * * * As a result, evidence that would be excluded as hearsay in a civil or criminal case may be admitted and considered under the relaxed standards of administrative proceedings." *Id.* at ¶ 13.

{¶ 23} Huron's lengthy Resolution No. 6472 supporting Fox's termination order contained nine findings of fact with 29 subfindings of fact. Huron's Resolution No. 6472 states, in part, "The referee chose to discount the significance of Fox's admissions. The Board does not." Huron's Resolution No. 6472 also contains a specific section analyzing ten aspects of the referee's determinations of witness and evidence credibility and the lack of explanations by the referee as to why he did not credit some testimony and documentary evidence. Interpreting the significance of the referee's facts was precisely Huron's duty under R.C. 3319.16, and Huron met that duty in Resolution No. 6472. Huron's Resolution No. 6472 also contains a section of twelve conclusions that are instructive in this appeal as to whether the trial court abused its discretion when it concluded the record lacked a preponderance, of reliable, probative and substantial evidence to support Huron's termination decision.

11.

{¶ 24} Huron's first of twelve conclusions specifically states, "The Board of Education rejects the analysis and conclusions contained in the referee's 'Report and Recommendation,' including but not limited to his recommendation that the Board not proceed with the termination of Fox's contract at this time."

{¶ 25} The second conclusion states,

It is the conclusion of the Board that Fox's substantial abuse of the District's email system to conduct his affair violated Board policy EDE and EDE-R. It also violated Fox's employment contract which required him to perform his duties consistent with Board policy. Fox's misconduct is not excused with an "everybody does it" attitude because as the District's leader he should have held himself to a high standard of compliance with Board policy, because it was his responsibility to cause employees to stop or to initiate disciplinary action if necessary if he was aware of [an] employee violating the policy, and because there was no evidence in the record that any other employee deliberately and persistently abused the email system in the manner that Fox did.

{¶ 26} The third conclusion states,

The referee's finding that Fox was eligible for compensatory time is against the manifest weight of the evidence. Fox was a salaried employee. Compensatory time is permitted under federal law to compensate hourly public employees under an agreement reached before the work was

12.

performed in lieu of paying them at 1½ times their hourly rate of pay when they work in excess of 40 hours per week. 29 CFR 553.21(c)(2). Past practice only qualifies as an agreement if the person was hired before April 15, 1986. 29 CFR 553.21(o)(2)(B). Fox was not entitled to compensatory time for his weekend travel. His contract does not provide for compensatory time as a benefit, and the undisputed testimony established that no Board policy provides for it.

{¶ 27} The fourth conclusion states,

The referee's finding regarding Fox's failure to use his vacation time for February 28 and March 1, 2011 is against the manifest weight of the evidence. Fox was not working on either of those dates. Fox's contract provides him with vacation days which he can use or cash out. By failing to use his vacation days, he was able to retain those days for his future use or to cash-out. The Board concludes that by failing to use vacation leave for those dates, he acquired a benefit of financial value to which he was not entitled under his contract, and violated § 3(b) [Accurate Reporting] of the Ohio Licensure Code of Professional Conduct for Educators.

{¶ 28} The fifth conclusion states,

The referee's finding that the Board approved reimbursing Fox for his car rental is against the manifest weight of the evidence, based on the evidenced discussed above in ¶¶ 6a through 6f regarding Findings of Facts.

None of the five witnesses who were Board members at the time of the trip testified that the car rental was discussed, and Fox admitted that he did not discuss it. Fox's contract did not permit reimbursement for the purposes he testified he wanted to rent the car. Neither did the Board policy. It was also undisputed that Fox claimed reimbursement for two night [sic] of his hotel stay in Arizona that were not conference-related, and that he did not repay the District until Green raised the matter during her review of reimbursement records in February 2012. It is the Board's conclusion that by obtaining these reimbursements, Fox violated his contract, Board policy and § 7(g) [Accepting Compensation for Self Promotion or Personal Gain], of the Ohio Licensure Code of Professional Conduct for Educators.

{¶ 29} The sixth conclusion states,

It is the conclusion of the Board that, as part-owner and President of Kalahari Sandusky, Nelson was in a business relationship with the District and was a beneficiary of tax arrangements with the District for which Fox was involved through discussions and voting; and, that the District conducted business with Nelson's enterprises and purchased goods and services from them repeatedly from 2006 through 2010. It is the further conclusion that as part-owner and President of Kalahari Dells and the business that owned its affiliated golf courses, Nelson was in a position to provide Fox with free or reduced rate lodging at the Dells resort as well as

complimentary golf at its affiliated course. It is the conclusion of the Board that the preponderance of reliable, probative and substantial evidence shows that Fox obtained something of value from Nelson when he was given half price lodging with golf compliments of Nelson for his 2010 golf trip to the Wisconsin Dells, and when he accepted free lodging for two nights while attending the wedding of one of Nelson's children. The referee appears to excuse Fox's participation in the golf trip by noting that the subordinate administrators who Fox invited to accompany him on the 2010 Dells golf trip have not been punished. The Board concludes that nothing in the record shows that those subordinate administrators were aware of the arrangements that Fox had made. Similarly, the Board concludes that the acceptance of free lodging by private citizens or Wisconsin public officials does not excuse Fox's acceptance of such a thing of value in violation of R.C. 102.03 and § 7(b) [Accepting Compensation for Self Promotion or Personal Gain], of the Ohio Licensure Code of Professional Conduct for Educators.

{¶ 30} The seventh conclusion states,

It is the conclusion of the Board that the preponderance of evidence in the record shows that Fox plotted against and attempted to intimidate Green. It is also the conclusion of the Board that the record shows that Fox supported efforts to intimidate Slocum by supporting efforts alleging

criminal misconduct, although Fox's attempt at intimidation of Slocum was unsuccessful because the alleged misconduct had never happened. The record also shows that Fox's plotting and attempts to undermine Green were made in front of subordinate employees who were concerned about similar retaliatory conduct being directed against them if they made statements against Fox. And, the record shows that immediately before employees were to be interviewed by the investigator Markling, Fox made statements that caused the employees to be concerned that they could be questioned by Fox's attorneys based on whatever they might say during the investigative interviews. It is the conclusion of the Board that, through such actions, Fox engaged in unprofessional conduct.

**{¶ 31}** The eighth conclusion states,

The Licensure Code of Conduct for Professional Educators (Bd. Ex. 6) was adopted by the State Board of Education pursuant to H.B. 190 (127th Gen. A.). §9, and states (at page 14): "The Licensure Code of Professional Conduct for Ohio Educators applies to all individuals licensed by the Ohio Department of Education. The presumptive ranges are only applicable for disciplinary actions involving an educator's licensure or application for licensure. The presumptive ranges are not applicable for any discipline imposed at the local level. Possible discipline at the local level must follow all local contractual provisions, including but not limited to due process,

progressive discipline, and just cause.  However, **an educator who violates one or more of the principles may be subject to discipline at both the state level and local level**."  (Underlining and bold added.)  The Board therefore concludes that Fox may be subject to contractual termination for his multiple violations of that Code, as well as his violations of his contract and Board policies and other unprofessional conduct.

{¶ 32} The ninth conclusion states,

The referee relies on *Bertolini v. Whitehall City School District Board of Education*, 139 Ohio App. 3d 595 (10th Dist. 2000) to conclude that Fox's conduct does not warrant termination.  The referee's reliance is misplaced.  *Bertolini* concerned a charge of sexually harassing conduct that rested, in part, on emails sent to a subordinate employee.  However, the alleged victim of the administrator's conduct testified that his conduct did not affect her work, and that district's board policy allowed personal email messages.  *Bertolini*, 139 Ohio App. 3d at 607.  By contrast, Huron's Board policy EDE-R states that its email system "shall only be used for purposes related to education or administration of the school district," and "personal use of the system is strictly prohibited."  Additionally, there was evidence that Vonthron was upset that Fox's conduct caused her to be rumored to be his paramour, that Fox grossly violated the Board policy with hundreds of emails to his paramour and often did so during working hours, and that Fox

was distracted or away from his office, thus allowing a confusing shared power structure to develop because of Fox's leadership vacuum.

**{¶ 33}** The tenth conclusion states,

While the Board <u>may</u> weigh Fox's performance history, it is not required to do so, especially where the disciplinary charges involve multiple incidents of misconduct. *Hykes v. Board of Education of the Bellevue City School District*, (6th Dist.) 2012-Ohio-6059, ¶¶ 23-24. However, if the Board does consider Fox's performance history, it chooses to consider the entire history. The referee attributed the District's excellent rating and good facilities solely to Fox, then used that attribution to suggest that the Board must weigh that record against the disciplinary charges and proven violations of Board policy and the Licensure Code. The Board also notes that the referee cited Vonthron's testimony as support for his position that the District has thrived under Fox's leadership. (Report pages 22, 45). However, the referee ignored the full context of the questions posed and her responses. She was asked whether the District had prospered between 2010 and 2012, setting aside the problems with her building's boiler and "the educational stuff," specifically with respect to test scores. She responded that [the] District's scores had gone up in some areas, but not in others, and it was rated excellent in some areas but not others. When asked if the District had prospered, Vonthron responded that it [had] done so in spite of

the things going on with Fox, a reference not limited to his inappropriate relationship. (T. 470-471) The Board considers that this District has long been a very good District academically, and that it remains so because of the efforts of many staff members, this Board and the support of the students, parents and community. Evidence in the record shows that while facilities improvements like windows and boilers were made during Fox's tenure, he failed to ensure that his Director of Maintenance pursued correction of deficiencies in those improvements, or other problems. Evidence in the record also shows that Fox has failed to focus on academic leadership and technology planning to support students' academic performance. The record also shows poor leadership through Fox's focus on threats of retaliation and "killing the messenger," rather than fixing the problem that the message concerned – whether it was about maintenance issues, or allegations of improprieties in the bus garage. Finally, the Report ignores the evidence about Fox's role in sending the District into difficult financial straits several years ago.

{¶ 34} The eleventh conclusion states,

Ohio law authorizes the superintendent to suspend and expel students who violate policies, rules and conduct codes. Fox's job description (Bd. Ex. 2) assigns the superintendent responsibility for recommending disciplinary action against personnel, and the responsibility

to "serve as a role model for students in how to conduct themselves as citizens and as responsible, intelligent human beings," and "to instill in students belief in and practice of ethical principles." By his conduct, as evidenced in the record of these proceedings – including, as examples, pursuit of a personal relationship using the District's non-private email system, failing to record use of vacation, obtaining improper reimbursements, and accepting gifts or things of value – Fox violated his duties and responsibilities as superintendent and his contractual duty (see Bd. Ex. 1) "to perform the duties specified in the Job Description" and "to perform all duties as prescribed by law and consistent with Board Policy." It is the conclusion of the Board, in light of Fox's conduct as reflected in the record of the hearing, that Fox can neither effectively lead the District, nor be a role model for ethical conduct, nor be an effective disciplinarian for students or employees.

{¶ 35} The twelfth conclusion was stated previously in our decision.

Even if this court accepts Fox's argument that the sixth conclusion regarding tax arrangement benefits was not contained in the original charges brought by Huron against Fox, conclusions one through five and seven through twelve remain unresponded to by the common pleas court.

{¶ 36} In applying the abuse of discretion standard of review, we find the common pleas court was clearly erroneous in its misapplication of the law to the facts of the case

in finding that there was a lack of a preponderance of reliable, probative and substantial evidence to support Huron's order to terminate Fox's contract. In applying the tests of reliable, probative and substantial evidence to the entire record, this court finds the common pleas court failed to demonstrate any application of these tests to Resolution No. 6472, which was the sole administrative decision before it on appeal. Huron's Resolution No. 6472 gave due deference to the referee's report and recommendation by providing pointed responses to the facts and conclusions made therein. As a result of Huron's analysis, it dropped certain subcharges against Fox, which are reflected in the twelfth conclusion. Huron met its duty under R.C. 3319.16, which the common pleas court ignored. We find the common pleas court abused its discretion.

{¶ 37} Appellant Huron's first assignment of error is found well-taken.

{¶ 38} All remaining assignments of error by appellant Huron and cross-appellant Fox question the damages awarded by the trial court. In light of this court's ruling on appellant Huron's first assignment of error, the remaining assignments of error are moot. App.R. 12(A).

{¶ 39} The judgment of the Erie County Court of Common Pleas is reversed. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.      _____
<br>                                              JUDGE

Thomas J. Osowik, J.

                                                _____

James D. Jensen, P.J.                       JUDGE
<br>CONCUR.

                                                _____
<br>                                              JUDGE