[Cite as *Lalibla, L.L.C. v. Harris, Tax Commr.*, 2024-Ohio-5995.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Lalibla, LLC, | : | |
| Appellant-Appellant, | : | No. 24AP-265 |
| | | (BTA No. 2021-1986) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Patricia Harris, Tax, | : | |
| Commissioner of Ohio, | : | |
| Appellee-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on December 23, 2024

**On brief:** *Ronald B. Noga* for appellant. **Argued:** *Ronald B. Noga.*

**On brief:** *Dave Yost*, Attorney General, and *Daniel G. Kim* for appellee. **Argued:** *Daniel G. Kim.*

APPEAL from the Ohio Board of Tax Appeals

EDELSTEIN, J.

{¶ 1} Appellant, Lalibla, LLC, appeals from a decision and order of the Ohio Board of Tax Appeals ("BTA") affirming the final determination of appellee, the Tax Commissioner of Ohio ("commissioner"), issuing a sales tax assessment against appellant. For the reasons that follow, we affirm.

## I. Facts and Procedural History

{¶ 2} Appellant operates an Ethiopian restaurant in Columbus, Ohio. The restaurant offers a traditional coffee ceremony and offers catering for weddings and other events. Alemu Getachew is appellant's owner and president. The Ohio Department of Taxation ("department") commenced a sales tax audit of appellant because appellant's

form 1099-K[1] credit card receipts were significantly greater than the gross sales appellant reported to the state. In 2016, for instance, appellant reported $98,862.68 in gross sales on its state sales tax return, but appellant's 1099-K documented $450,028 in credit card receipts.

{¶ 3} On April 17, 2019, the department sent appellant an audit commencement letter. The department identified an audit period of January 1, 2016 through February 28, 2019, and asked appellant to produce the following documents pertaining to the audit period: form 1099-Ks, bank statements, federal tax returns, monthly sales tax reconciliations from appellant's point-of-sale ("POS") system, sales activity by day/date range from appellant's POS system, cash register tapes, and a sales journal or similar listing of all items sold. Appellant initially provided the department with its 2016 to 2018 federal tax returns, 2018 bank statements, 2017 check stubs, 2016 bank statements, and some catering order forms.

{¶ 4} A department tax examiner (the "auditor") conducted the sales tax audit of appellant. The auditor noted that, while appellant produced some documents in response to the department's initial request, appellant "did not provide Point of Sales reports or guest checks showing the amount of tax collected." (Audit Remarks at 6.) The auditor sent appellant a preliminary proposal on August 6, 2019, proposing an assessment of $93,754.30 for the audit period, plus applicable interest and a 50 percent penalty.

{¶ 5} Following the auditor's preliminary proposal, appellant produced additional catering order forms and invoices documenting an additional $26,127.99 in exempt catering sales. The auditor incorporated the additional exempt sales into the audit and the "change resulted in a reduction in sales tax due of $1,959.61." (Audit Remarks at 7.) Thereafter, appellant produced additional catering order forms documenting $36,920.43 in exempt catering sales. The auditor again incorporated the additional catering sales into the audit and the change "resulted in a reduction in sales tax due of $2,769.03." (Audit Remarks at 7.)

{¶ 6} In September and October of 2019, appellant provided the auditor its 2017 and 2018 cash register tapes, also known as "z-tapes." *See Thorbahn Ents., LLC v. Ohio*

---

[1] A form 1099-K is a report of payments a business received for goods or services from credit or debit cards. *See* Internal Revenue Service, *Understanding your Form 1099-K*, https://www.irs.gov/businesses/understanding-your-form-1099-k (accessed Dec. 11, 2024).

*Dept. of Taxation*, 10th Dist. No. 21AP-18, 2021-Ohio-4457, ¶ 3.  The auditor revised her audit based on the z-tapes.  However, the auditor noted the 2017 z-tape was missing 87 days and the 2018 z-tape was missing "numerous days." (Audit Remarks at 4-5.)  The z-tapes demonstrated appellant was not collecting tax on beer, wine, liquor, or soft drinks, and that appellant was charging tax on dine-in food sales at 7 percent when the correct tax rate was 7.5 percent.  The auditor noted she "advised the taxpayer to reprogram the register to the correct tax rate of 7.5% and to charge tax on beer, wine, and liquor." (Audit Remarks at 6.)  Additionally, while the z-tapes showed "the quantity of carryout sales," the z-tapes did not "show the dollar amount of carry out sales." (Audit Remarks at 4.)  As such, the auditor "divided the quantity of carryout sales" documented in the 2017 and 2018 z-tapes "by the quantity of [appellant's] total food sales to come up with a percentage of food sales that were taken to-go." (Audit Remarks at 4.)  Based on this calculation, the auditor found appellant's estimated exempt carryout sales percentage to be 18 percent in 2017 and 17 percent in 2018.

{¶ 7}  On December 27, 2019, the department informed appellant the audit was complete.  The audit resulted in a sales tax assessment of $134,113.33 for the period of January 1, 2016 to August 31, 2019, plus interest of $11,572.84 and a penalty of $67,056.47.  In her audit remarks, the auditor explained the methodology she employed to reach that result.

{¶ 8}  The auditor employed a similar methodology for 2016, 2017, and 2018.  The auditor initially estimated appellant's total sales by adding appellant's credit card receipts, as documented on either appellant's 1099-K forms or its bank statements, to the cash amount documented on the z-tapes.[2]  The auditor then multiplied appellant's estimated total sales by the estimated exempt carryout percentage she derived from the z-tapes to determine appellant's estimated exempt carryout sales.[3]  The auditor added appellant's estimated exempt carryout sales to the total amount of catering sales documented on the catering order forms and invoices to determine the total amount of appellant's exempt

---

[2] Because appellant did not produce a z-tape for 2016, the auditor used a cash estimate for that year. To calculate the cash estimate, the auditor applied the cash to 1099-K ratio from the 2017 z-tape to appellant's 2016 1099-K receipts.

[3] The auditor used the exempt sales percentage from the 2017 z-tapes in her calculations for 2016.

sales.  The auditor then subtracted appellant's exempt sales from its total sales to determine appellant's taxable sales.  The auditor multiplied the taxable sales by 7.5 percent, the Franklin County tax rate, to determine the total amount of sales tax due.  The auditor subtracted the amount of sales tax appellant previously paid to the state from the amount of sales tax due to arrive at appellant's sales tax liability for each year.  (Audit Remarks at 4-5.)

{¶ 9}  Appellant's monthly sales tax returns for 2019 demonstrated appellant continued "filing incorrectly * * * even after being advised to correct the register and collect/remit the sales tax due on all taxable transactions at the Franklin county rate of 7.5%."  (Audit Remarks at 5.)  As such, the auditor extended the audit period through August 31, 2019.  The auditor calculated a growth rate by comparing appellant's sales from January through August 2019 to the same months in 2016, 2017, and 2018.  The auditor then multiplied the growth rate by appellant's sales from 2018 to determine appellant's estimated total sales for 2019.  The auditor multiplied the estimated total sales by the 2018 estimated exempt carryout percentage to determine appellant's estimated exempt sales.  The auditor subtracted appellant's estimated exempt sales from its estimated total sales to come up with appellant's estimated taxable sales.  The auditor multiplied the taxable sales by 7.5 percent to determine the amount of sales tax due and subtracted the amount of sales tax appellant previously paid to the state to determine appellant's sales tax liability for 2019.

{¶ 10}  The department's initial audit proposal recommended adding a 50 percent penalty to the amount assessed.  Appellant responded to the initial proposal and asked the commissioner to abate the penalty.  The auditor noted she forwarded appellant's abatement request to the Penalty Imposition Group, but the Penalty Imposition Group "decided the penalty should remain at 50%."  (Audit Remarks at 6.)  As such, the auditor included the full 50 percent penalty in the audit.

{¶ 11}  On February 9, 2020, appellant filed its initial petition for reassessment and a letter from its accountant, James R. Cloyes.  On May 20, 2021, appellant filed a subsequent petition for reassessment and a letter from its new accountant, Brandon M.

Bonnet.[4]  Appellant relied on Mr. Bonnet's proposed methodology throughout the remainder of the proceedings.

{¶ 12} In his letter, Mr. Bonnet stated he disagreed with the auditor's method of determining appellant's "actual taxable food sales." (Statutory Transcript ("Stat. Tr.") at 28.) Mr. Bonnet relied on the "observation of Mr. Cloyes and three ODT Auditors," who went to appellant's restaurant in September of 2019 and observed appellant charging tax on dine-in food sales at 7 percent, rather than the correct rate of 7.5 percent, and observed appellant not charging any tax on alcohol sales. Mr. Bonnet noted appellant had "disclosed that a majority of [its] food sales [were] catering," but further noted "[m]ost sheets for catering orders [were] not retained" and "none of the catering [sales were] ever posted to the cash register." (Stat. Tr. at 28.) Mr. Bonnet stated that, "[b]y observation of actual transactions being recorded on the register, any believed cash or card amounts, whether coming from the bank statements or 1099-Ks, are from catering." (Stat. Tr. at 28.) As such, Mr. Bonnet did not believe any "additional amounts need[ed] to be added to" the cash and card sales documented on the z-tapes to calculate appellant's "taxable sales." (Stat. Tr. at 28.)

{¶ 13} Mr. Bonnet relied on the sales documented on appellant's 2017 and 2018 z-tapes to determine the amount of sales tax appellant should have charged on dine-in food and drink sales. Mr. Bonnet's calculations demonstrated appellant was "consistently under-reporting sales tax" each year at "about 39 percent of actual calculated sales tax." (Stat. Tr. at 29.) Mr. Bonnet applied the 39 percent figure to the amount of sales tax appellant actually paid in 2016 and 2019 to arrive at a total amount of sales tax due for the audit period of $46,911.73. Mr. Bonnet asked the commissioner to either reduce the assessment to $46,911.73 or conduct a new audit. Mr. Bonnet also asked the commissioner to abate the 50 percent penalty.

{¶ 14} On August 31, 2021, the commissioner issued his final determination affirming the assessment as issued. The commissioner explained that, because appellant failed to maintain the records it was required to maintain pursuant to R.C. 5739.11 and Ohio Adm.Code 5703-9-02, the commissioner was "statutorily authorized to utilize any

---

[4] Appellant notes Mr. Bonnet replaced Mr. Cloyes because Mr. Cloyes died during the pendency of the proceedings. (Appellant's Brief at 6-7.)

information at [its] disposal that would reasonably estimate the taxpayer's sales." (Stat. Tr. at 2.) The commissioner found the auditor appropriately relied on the records appellant produced and made "reasonable reconciliations of the information provided to determine the assessment." (Stat. Tr. at 2.) The commissioner noted that, while appellant "suggest[ed] the assessment [was] overstated due to exempt catering sales," appellant "admit[ted] that it [did] not have the necessary records to dispute the amount calculated by the Tax Commissioner." (Stat. Tr. at 3.) As such, the commissioner found appellant failed to carry its burden to demonstrate error in the sales tax assessment. The commissioner also denied appellant's request for abatement of the 50 percent penalty.

{¶ 15} Appellant appealed the commissioner's final determination to the BTA. The parties jointly waived the hearing before the BTA and submitted written briefs stating their positions.

{¶ 16} On March 21, 2024, the BTA issued a decision and order affirming the commissioner's final determination. The BTA found the commissioner reasonably estimated appellant's tax liability based on the documents appellant provided. Given the inconsistencies in appellant's sales reporting documents, the BTA found it reasonable for the commissioner to "approach[] the taxpayer's records with skepticism." (BTA Decision and Order at 3.) Because appellant presented "no credible evidence showing what [its tax] liability should be, nor could it because it did not retain primary records for large portions of the audit period," the BTA concluded appellant failed to demonstrate error in the commissioner's assessment. (BTA Decision and Order at 3.) The BTA also found the commissioner did not abuse his discretion by assessing the 50 percent penalty.

## II. Assignments of Error

{¶ 17} Appellant appeals, assigning the following errors for our review:

Assignment of Error No. 1
The Board of Tax Appeals erred in holding Appellant presented no credible evidence showing what its liability should be as Appellant presented records showing a specific tax liability for the periods in question.

Assignment of Error No. 2
The Board's acceptance of the Tax Commissioner's asserted rejection of Appellant's methodology for arriving at tax liability without any explanation or independent review and

consideration was reversible error as it violated the Board's obligations to conduct a <u>de novo</u> review of the evidence.

Assignment of Error No. 3
The BTA erred affirming a 50% tax penalty when the Tax Commissioner failed to present any rationale for imposing it and only referred to a "decision" of an unknown entity described as the 'Penalty Imposition Group' evidencing an arbitrary and unconscionable process.

(Emphasis sic.)

## III. Standard of Review

{¶ 18} The findings of the commissioner are "presumptively valid." *Alcan Aluminum Corp. v. Limbach*, 42 Ohio St.3d 121, 123 (1989). *Accord Nusseibeh v. Zaino,* 98 Ohio St.3d 292, 2003-Ohio-855, ¶ 10. In an appeal to the BTA, the taxpayer has the burden to demonstrate the commissioner's findings were unreasonable or unlawful. *Alcan Aluminum Corp.* at 123; R.C. 5717.04. To carry its burden, the taxpayer must show " 'the manner and extent of the error in the Tax Commissioner's final determination.' " *A. Schulman, Inc. v. Levin*, 116 Ohio St.3d 105, 2007-Ohio-5585, ¶ 7, quoting *Stds. Testing Laboratories, Inc. v. Zaino*, 100 Ohio St.3d 240, 2003-Ohio-5804, ¶ 30. *See Simon Oil Co. v. Harris*, BTA No. 2020-714, 2023 Ohio Tax LEXIS 983, *3 (June 26, 2023), citing *Suleiman v. Zaino*, BTA No. 99-L-1823, 2001 Ohio Tax LEXIS 1933 (Nov. 2, 2001) (stating that to prevail in an appeal to the BTA, a taxpayer "must ordinarily establish its actual tax liability or show some other error using verifiable information"); *Accel, Inc. v. Testa*, 152 Ohio St.3d 262, 2017-Ohio-8798, ¶ 14 (noting the taxpayer has the burden to establish the tax commissioner's findings were "incorrect"); *Federated Dept. Stores, Rike-Kumler Div. v. Lindley*, 5 Ohio St.3d 213, 215 (1983).

{¶ 19} "[T]he BTA's standard for reviewing the tax commissioner's findings is de novo, as to both facts and law." *Accel, Inc.* at ¶ 13, citing *Key Servs. Corp. v. Zaino*, 95 Ohio St.3d 11, 16 (2002). When the parties waive presentation of further evidence before the BTA, the BTA must "make its own independent judgment based on its weighing of the evidence contained in [the statutory] transcript." *Columbus Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 76 Ohio St.3d 13, 15 (1996). Thus, when a taxpayer does not present new evidence at a hearing before the BTA, the taxpayer must "meet its burden solely by relying

upon the record before [the BTA]." *P.N.G., Inc. v. Testa*, BTA No. 2016-912, 2017 Ohio Tax Lexis 1280, *7 (May 22, 2017).

{¶ 20} This court must affirm the BTA's factual findings if they are supported by reliable and probative evidence. *HealthSouth Corp. v. Testa*, 132 Ohio St.3d 55, 2012-Ohio-1871, ¶ 10. The function of "weighing evidence and determining credibility belongs to the BTA." *Id.* As such, we afford deference to the BTA's determinations pertaining to weight of the evidence and credibility of witnesses "subject only to an abuse-of-discretion review on appeal." *Id.*, citing R.C. 5717.04. *Accord Dave's Drive Thru v. Zaino*, 8th Dist. No. 81595, 2003-Ohio-1351, ¶ 7, quoting *Cardinal Fed. S. & L. Assn. v. Cuyahoga Cty. Bd. of Revision*, 44 Ohio St.2d 13 (1975), at paragraph three of the syllabus (noting the BTA is " 'vested with wide discretion in determining the weight to be given to evidence and the credibility of witnesses which come before the board' "). However, a reviewing court "will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion." *Gahanna-Jefferson Local School Dist. Bd. of Edn. v. Zaino*, 93 Ohio St.3d 231, 232 (2001). *Accord Stingray Pressure Pumping LLC v. McClain*, 10th Dist. No. 18AP-110, 2019-Ohio-5198, ¶ 14.

## IV. First and Second Assignments of Error: Appellant's Evidence and De Novo Review

{¶ 21} In its first assignment of error, appellant contends the BTA erred by finding appellant presented no credible evidence demonstrating what its tax liability should be. In its second assignment of error, appellant asserts the BTA erred by failing to conduct a de novo review of the evidence.

{¶ 22} R.C. 5739.02 provides for the levy of an excise tax on each retail sale made in Ohio. R.C. 5739.02(A). The tax does not apply to "[s]ales of food for human consumption off the premises where sold." R.C. 5739.02(B)(2). Thus, appellant's carryout and catering food sales were not taxable. If a vendor collects the tax imposed by R.C. 5739.02 "and fails to remit the tax to the state as prescribed," or if a vendor "fails to collect the tax" required by R.C. 5739.02, the vendor "shall be personally liable" for the tax not remitted to the state or for the amount of tax applicable to the transaction. R.C. 5739.13(A). When a vendor fails to collect tax or fails to remit tax to the state, the tax commissioner may make an

assessment against the vendor "based upon any information in the commissioner's possession." R.C. 5739.13(A).

{¶ 23} R.C. 5739.11 requires vendors to "keep complete and accurate records of sales, together with a record of the tax collected on the sales," including "all invoices, bills of lading, and other such pertinent documents." Ohio Adm.Code 5703-9-02 further identifies the types of records vendors "must maintain," including:

> (1) Primary records such as purchase invoices, bills of lading, sales invoices, guest checks, exemption certificates, tax payment receipts, and cash register tapes;
>
> (2) Secondary records such as bank deposit receipts and day books, journals, or any other records in which accumulated data is recorded. Secondary records must be supported by complete primary records.

Ohio Adm.Code 5703-9-02(A)(1) and (2).

{¶ 24} A vendor's records are considered adequate "if the records demonstrate to the tax commissioner that the vendor collected the proper amount of sales tax due on the vendor's taxable sales." Ohio Adm.Code 5703-9-02(B). Primary records "must distinguish between taxable and nontaxable items" and "must separately state the total amount of each transaction and the tax charged on the transaction." Ohio Adm.Code 5703-9-02(B)(1). Because "all sales of tangible personal property in this state are presumed to be subject to sales tax until the contrary is established, the burden of proof rests upon each vendor to show what part, if any, of their gross receipts from sales resulted from nontaxable sales." Ohio Adm.Code 5703-9-02(A).

{¶ 25} Appellant contends it presented records demonstrating its specific tax liability for the audit period. Appellant asserts Mr. Bonnet's proposed sales tax assessment was "the appropriate tax liability," because Mr. Bonnet's methodology "recogniz[ed] that the sales reflected in 1099Ks were from exempt catering sales." (Appellant's Brief at 5, 7.) Appellant alleges the commissioner erred by using the credit card sales documented on its 1099-K receipts and bank statements to determine appellant's total taxable sales because appellant's "exempt catering sales were almost all credit card sales." (Appellant's Brief at 5.)

**{¶ 26}** However, appellant did not produce sufficient records to support its claim that nearly all of its credit card sales during the audit period were exempt catering sales. Appellant produced some catering order forms and/or invoices during the audit, and the auditor gave appellant credit for every catering order form or invoice produced. The catering forms and invoices appellant produced did not account for the large number of sales documented on appellant's 1099-K forms and bank statements. Although appellant informed Mr. Bonnet "that a majority of [its] food sales [were] catering," Mr. Bonnet acknowledged most "sheets for catering orders [were] not retained" by appellant. (Stat. Tr. at 28.) Thus, appellant's own evidence demonstrated it did not have adequate records to verify all of its claimed catering sales. The BTA found it reasonable for the commissioner to give "primary weight to documents related to the audit period," such as appellant's 1099-K receipts and bank statements, "over potentially unrepresentative observations made after the audit period," such as those contained in Mr. Bonnet's letter. (BTA Decision and Order at 3.)

**{¶ 27}** Although R.C. 5739.11 and Ohio Adm.Code 5703-9-02 required appellant to keep complete and accurate sales records, including copies of all sales invoices, appellant failed to maintain a record of all its catering sales. It is the BTA's function to weigh the evidence and determine credibility, and it is "not [this court's] place to reweigh the evidence." *Grace Cathedral, Inc. v. Testa*, 143 Ohio St.3d 212, 2015-Ohio-2067, ¶ 54. The commissioner and the BTA were under no obligation to believe appellant's statement indicating the majority of its sales were catering sales, when appellant did not have adequate records to verify the amount of its catering sales and could only point to observations of the restaurant made after the audit period. Accordingly, the BTA acted within its discretion to ascribe little weight to appellant's post-audit claim indicating the majority of its food sales were catering sales and therefore exempt.

**{¶ 28}** Appellant contends the auditor erred in her methodology because she "made up an exempt carry out sale percentage based not * * * on the price of such sales but on the 'quantity' of such sales." (Emphasis sic.) (Appellant's Brief at 6.) The auditor used the quantity, rather than the monetary amount, of appellant's carryout sales in her calculations because appellant's 2017 and 2018 z-tapes documented "the quantity of carryout sales" but

not the "dollar amount of carry out sales." (Audit Remarks at 4.) Appellant did not provide the auditor with information demonstrating the total price of its exempt sales.

{¶ 29} "[I]f the commissioner conclude[s] that necessary information was lacking, the commissioner [is] not only entitled to, but [is] required, to gather information from other sources and estimate the amount of taxes which should have been collected and remitted." *Baker v. Testa*, BTA No. 2015-1479, 2016 Ohio Tax LEXIS 1420, *3-4 (June 24, 2016). *Accord Dukester, LLC v. Testa*, BTA No. 2015-2168, 2016 Ohio Tax LEXIS 2710, *3-4 (Dec. 6, 2016); *Simon Oil Co.*, 2023 Ohio Tax LEXIS 983 at *2, citing R.C. 5739.13 (noting "[i]f a vendor fails to maintain adequate records, the Commissioner may assess the vendor based upon any information in the Commissioner's possession"). In *Baker*, the appellant produced "only partial records for the [audit] period in question," and the BTA found the auditor appropriately relied on appellant's purchase inventory information (known as a "purchase mark-up analysis") to audit the business. *Id.* at *2. Although the appellant argued the auditor's methodology ignored some of appellant's other records, the BTA noted appellant's criticisms "ignore[d] the fact that such approach was used due to the auditor's conclusion that necessary records were not available." *Id.* at *3. *See also Dave's Drive Thru*, 2003-Ohio-1351 at ¶ 10, citing *Russo v. Donahue*, 10 Ohio St.2d 201 (1967) (stating that, because the taxpayer "failed to comply with the statutory record keeping requirements of R.C. 5739.11," the BTA "correctly determined that the Tax Commissioner acted within its authority to create a formula to determine taxes due").

{¶ 30} Because appellant failed to maintain accurate and complete records documenting its nontaxable sales, the commissioner was both entitled to and required to gather information and estimate the amount of taxes appellant should have collected and remitted. Appellant argues "if the Tax Commissioner can use 'other evidence', the taxpayer cannot be denied the use of 'other evidence' in presenting a methodology resulting in a different liability." (Appellant's Brief at 9.) Appellant's argument in this regard ignores its own record-keeping obligations under R.C. 5739.11. Had appellant maintained the sales records it was statutorily required to keep, there would have been no need for the auditor to derive an estimated exempt sales percentage. *See Brandy's Inc. v. Zaino*, 3d Dist. No. 5-01-43, 2002 Ohio App. LEXIS 1698, *12 (Apr. 18, 2002) (noting the "overriding purpose" of R.C. 5739.11 and Ohio Adm.Code 5703-9-02 "is to enable the Tax Commissioner to

readily ascertain a retailer's sales tax liability"). Accordingly, the auditor appropriately used the information contained in appellant's z-tapes, bank statements, and 1099-K receipts to estimate the amount of taxes due.

{¶ 31} Appellant had "the burden * * * to establish its actual tax liability or any other error in the assessment through competent, probative evidence." *Dukester*, 2016 Ohio Tax LEXIS 2710 at *10. Appellant contends Mr. Bonnet's letter set forth the appropriate sales tax assessment, but Mr. Bonnet's letter merely set forth an alternative method for calculating appellant's tax liability. Mr. Bonnet's letter did not amount to competent, probative evidence demonstrating error in the commissioner's assessment and the BTA was under no obligation to accept the results from Mr. Bonnet's alternative calculation. *See Ali v. Tracy*, 8th Dist. No. 78331, 2001 Ohio App. LEXIS 2532, *6 (June 7, 2001) (noting the "BTA was under no obligation to accept the results presented from the appellant's independent test check"); *Dukester* at *9 (noting that, although the appellant "contest[ed] the methodology utilized by the commissioner," because appellant's sales records were "deficient," the BTA was "constrained" to find the "information submitted by appellant [was] insufficient to overcome the presumption of correctness of the commissioner's decision").

{¶ 32} Because appellant's sales records were deficient, appellant could not produce evidence demonstrating what its actual tax liability should be. Accordingly, appellant failed to carry its burden to demonstrate error in the commissioner's final determination. As such, we overrule appellant's first assignment of error.

{¶ 33} In its second assignment of error, appellant asserts the BTA "made no independent assessment of the Appellant's evidence." (Appellant's Brief at 13.) "[I]n the absence of evidence to the contrary, a presumption of regularity attaches to the BTA's actions." *Lowe's Home Ctr., Inc. v. Washington Cty. Bd. of Revision*, 154 Ohio St.3d 463, 2018-Ohio-1974, ¶ 49. Accordingly, absent an affirmative indication to the contrary, we presume the BTA conducted a de novo review of the evidence. *See Morrissette v. DFS Servs., LLC*, 10th Dist. No. 12AP-611, 2013-Ohio-4336, ¶ 44; *In re J.P.*, 10th Dist. No. 16AP-61, 2016-Ohio-7574, ¶ 13.

{¶ 34} The BTA specifically noted it was reasonable for the commissioner to "give primary weight to documents related to the audit period over potentially unrepresentative

observations made after the audit period." (BTA Decision and Order at 3.) It is therefore evident that the BTA acknowledged Mr. Bonnet's letter and found it reasonable for the commissioner to assign little weight to the post-audit observations contained in the letter.

{¶ 35} Appellant contends the BTA failed to conduct a de novo review because the BTA did not address the commissioner's use of " 'total receipts' as evidence of taxable sales when auditing a restaurant/bar with a large catering business" or the commissioner's calculation of an exempt sales rate "not based on the price of any sale but on the 'quantity' of sales." (Emphasis sic.) (Appellant's Brief at 13-14.) We have previously addressed both arguments. As noted, because appellant failed to maintain adequate records documenting its nontaxable sales, the auditor was entitled to gather information from other sources to estimate the amount of taxes due. Appellant's arguments do not indicate the BTA failed to conduct a de novo review of the evidence. As such, we overrule appellant's second assignment of error.

## V. Third Assignment of Error−Penalty Abatement

{¶ 36} In its third assignment of error, appellant asserts the BTA erred by affirming the 50 percent penalty imposed by the commissioner. R.C. 5739.133(A)(1) provides that "[a] penalty may be added to every amount assessed under [R.C.] 5739.13 * * * up to fifty per cent of the amount assessed." "By stating that a penalty 'may be added,' [R.C. 5739.133] confers discretionary authority on the tax commissioner to impose a penalty in conjunction with an assessment of unpaid sales tax." *Karr v. McClain*, 166 Ohio St.3d 513, 2022-Ohio-449, ¶ 7. The BTA may reverse the imposition of a penalty only if it finds an abuse of discretion by the commissioner. *Id.* at ¶ 7, citing *J.M. Smucker, L.L.C. v. Levin*, 113 Ohio St.3d 337, 2007-Ohio-2073, ¶ 16. *See Buckley v. Wilkins*, 105 Ohio St.3d 350, 2005-Ohio-2166, ¶ 25 (noting the taxpayer "bears the burden of showing that the Tax Commissioner abused his discretion when he imposed the [penalty]"). "An abuse of discretion in the tax-penalty context is an act showing an 'arbitrary or unconscionable attitude' on the part of the tax commissioner." *Karr* at ¶ 8, quoting *Renacci v. Testa*, 148 Ohio St.3d 470, 2016-Ohio-3394, ¶ 32.

{¶ 37} Appellant asserts the commissioner abused his discretion by relying on the recommendation of the Penalty Imposition Group to "refuse to abate the penalty." (Appellant's Brief at 18.) Appellant contends the commissioner impermissibly "delegate[d]

his discretion to this unknown group whose unexplained decision [was] accepted without question." (Appellant's Brief at 17.)  However, the commissioner is statutorily authorized to delegate the commissioner's investigatory powers to department employees.  *See* R.C. 5739.35 (providing that, for purposes of enforcing R.C. Chapter 5739, the commissioner "may delegate any investigation powers of the commissioner to any employee of the department of taxation who has been certified by the Ohio peace officer training commission and who is engaged in the enforcement of this chapter"); R.C. 5743.45(B).

{¶ 38}  Moreover, while the auditor may have relied on the recommendation of the Penalty Imposition Group to initially include the 50 percent penalty in the audit, there is nothing in the record indicating the commissioner relied on the Penalty Imposition Group's recommendation to reject appellant's request for penalty abatement.  R.C. 5739.133 confers discretion on the commissioner to initially impose a penalty, and the commissioner's "discretionary authority extend[s] throughout the reassessment proceedings, so [the commissioner] ha[s] the discretion to abate the penalty in the final determination."  *Karr* at ¶ 7, fn. 1.  In his final determination, the commissioner refused to abate the penalty because he found the record established appellant "collected but did not remit tax for most of the audit period." (Stat. Tr. at 3.)  The BTA determined the commissioner did not abuse his discretion by refusing to abate the penalty "given the significant shortcomings in the taxpayer's collection, remittance, and tax reporting." (BTA Decision and Order at 4.)

{¶ 39}  Appellant's 2017 and 2018 z-tapes demonstrated appellant had tax "collected not remitted for March 2017 – August 2018." (Audit Remarks at 6.)  Although appellant notes that the $67,056.47 penalty was greater than the amount of tax it collected and failed to remit, appellant acknowledges it collected and failed to remit tax during the audit period. (Appellant's Brief at 15.)  As such, we find competent, credible evidence supported the commissioner's reason for refusing to abate the penalty.  *See Dave's Drive Thru*, 2003-Ohio-1351 at ¶ 18 (stating that, because the commissioner's reason for denying the request for penalty abatement was "supported by competent, credible evidence in the record," the court could not "say there was an abuse of discretion in imposing the penalty").

{¶ 40}  Appellant further asserts the commissioner failed to consider several pertinent factors before deciding whether to abate the penalty.  Appellant contends the commissioner should have considered that Mr. Getachew is from Ethiopia, speaks limited

English, did not have a modern cash register system for the business, and that Mr. Getachew did not "inten[d] to deceive or 'cheat' the system." (Appellant's Brief at 16.) However, appellant fails to establish the commissioner was required to consider any of these facts. R.C. 5739.133(A)(1) permits the commissioner to impose up to a 50 percent penalty on "every amount assessed under [R.C.] 5739.13." The statute does not direct the commissioner to consider the taxpayer's intent or situation before imposing the penalty. *Compare* R.C. 5747.15 (providing for an income tax penalty but providing the penalty may be abated if the taxpayer demonstrates their "failure to comply with the provisions of [R.C. Chapter 5747 was] due to reasonable cause and not willful neglect"). Appellant fails to demonstrate the commissioner abused his discretion by imposing or refusing to abate the 50 percent penalty.

{¶ 41} Based on the foregoing, we overrule appellant's third assignment of error.

## VI. Conclusion

{¶ 42} Having overruled appellant's first, second, and third assignments of error, we affirm the decision and order of the BTA.

*Judgment affirmed.*

MENTEL, P.J. and LUPER SCHUSTER, J., concur.

———————————